# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60140

United States Court of Appeals
Fifth Circuit

**FILED**
February 8, 2018

Lyle W. Cayce
Clerk

MELSI GARCIA NUNEZ,

      Petitioner,

v.

JEFFERSON B. SESSIONS, III, U. S. ATTORNEY GENERAL,

      Respondent.

Petition for Review of an Order
of the Board of Immigration Appeals

Before WIENER, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM:

*Pro se* petitioner Melsis Garcia-Nuñez,[1] a native and citizen of Honduras, petitions for review of the Board of Immigration Appeals' order upholding the denial of her motion to reopen removal proceedings. The Board did not abuse its discretion in dismissing Garcia-Nuñez's appeal and in affirming the immigration judge's decision finding that Garcia-Nuñez received proper notice

---

[1] Garcia-Nuñez notes that her first name was misspelled in the underlying proceedings. Her passport confirms this misspelling. We use the spelling of her name as it appears on her passport in the text of our opinion, and we hyphenate "Garcia-Nuñez" as both parties do in their briefs. However, as our practice is to use the case caption from the Board of Immigration Appeals' order, we leave the case caption as "Melsi Garcia Nunez v. Jefferson B. Sessions, III, U.S. Attorney General."

No. 16-60140

of her removal hearing and failed to show a change in country conditions. Therefore, we DENY Garcia-Nuñez's petition for review.

I.

Petitioner Melsis Garcia-Nuñez, a native and citizen of Honduras, illegally entered the United States in 2004. The Department of Homeland Security (DHS) personally served her with a notice to appear, which charged her with removability under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without admission or parole. DHS advised her orally in Spanish that the notice to appear obligated her to keep the immigration court apprised of her current mailing address, and that she could be ordered removed if she failed to appear for a scheduled hearing. Garcia-Nuñez provided DHS with her mother's phone number and mailing address.

In February 2005, Garcia-Nuñez was sent a notice of hearing by regular mail to the address she had provided. The notice, however, was returned with a "not deliverable" stamp as well as the following handwritten statement on the front of the envelope: "She don't leave [sic] here." In 2005, the immigration judge ordered Garcia-Nuñez's removal *in absentia*. The removal order was mailed to the address Garcia-Nuñez had provided, but the envelope was returned with a "moved—left no address" stamp and a handwritten notice stating, "She don't leave [sic] here." In addition, there was another handwritten note requesting, "Please return." Five years later, Garcia-Nuñez married Miguel Zuniga, who became a naturalized citizen a few years after their marriage. A year after their marriage, Garcia-Nuñez gave birth to a son in Los Angeles, California.

Nine years after the notice of hearing was sent, Garcia-Nuñez filed a motion to reopen removal proceedings based on a lack of notice and a change in country conditions. According to Garcia-Nuñez, she never received the hearing notice. She stated that she was a minor at the time, and she and her

No. 16-60140

mother had moved in early 2005 from the address they had provided to DHS. She explained that until early 2005, she and her mother had rented a single room from an elderly lady but had arranged to continue to receive mail from the lady after they moved.  Garcia-Nuñez stated that neither she nor her mother ever received any notice of hearing from the elderly lady.  In addition to a declaration, Garcia-Nuñez also submitted copies of the envelopes containing her hearing notice and removal order, which both had "she don't leave [sic] here" written on them.  On the basis of this evidence, Garcia-Nuñez asserted she had rebutted the presumption that her hearing notice was properly served and thus had established good cause for granting her motion to reopen.

Garcia-Nuñez also requested asylum and withholding of removal based on changed country conditions.  In support of this request, she provided the State Department's Honduras Country Report for 2012, the Congressional Research Service's report on Honduras–U.S. Relations from 2013, and a collection of news articles from 2011–2014 reporting on murders and other human-rights abuses in Honduras.  Finally, Garcia-Nuñez requested *sua sponte* reopening of removal proceedings because of her husband and child.

The immigration judge denied Garcia-Nuñez's motion to reopen.  Stating that there is a presumption of delivery when a notice of hearing is sent by sregular mail, the immigration judge noted that this presumption is weaker than the presumption for certified mail.  The immigration judge stated that determining whether an alien has rebutted this weaker presumption of delivery requires considering all of the evidence submitted.  Finding that the notice of hearing was delivered to the address Garcia-Nuñez had provided, the immigration judge found that the notice was merely not personally received. The immigration judge then cited the Board of Immigration Appeals' (BIA) decision in *G-Y-R-*, 23 I. & N. Dec. 181, 189 (BIA 2001), which states that a

No. 16-60140

"failure in a household's internal workings" does not necessarily preclude charging the alien with receiving proper notice. Rather, the immigration judge noted that in such a case as this in which delivery occurred at the address provided to the court but the notice failed to reach the alien herself, the alien may be charged with receiving proper notice. Thus, the immigration judge found that Garcia-Nuñez received proper notice of her removal hearing.

The immigration judge also found that Garcia-Nuñez failed to show changed country conditions. Noting that a claim of changed country conditions requires a showing "not of severe present country conditions, but of a change in country conditions since the entry of the final administrative order of removal," the immigration judge found that Garcia-Nuñez had "not submitted any evidence . . . on country conditions as they existed in 2005, when she was ordered removed." The immigration judge then took administrative notice of the State Department's 2005 Honduras Country Report and found that violence against women was "widespread" in 2005. Using the 2005 report as a benchmark against which to determine whether a change in Honduras had occurred, the immigration judge found that Garcia-Nuñez did not make a *prima facie* case of a change because "it does not appear that the relevant country conditions to which the respondent alludes would affect her in a significantly different way than when she departed Honduras." For these reasons, the immigration judge denied Garcia-Nuñez's motion to reopen.

Garcia-Nuñez appealed the immigration judge's decision to the BIA. Adopting and affirming the immigration judge's decision, the BIA dismissed Garcia-Nuñez's appeal. The BIA agreed with the immigration judge regarding notice and also determined that Garcia-Nuñez had "not demonstrated changed country conditions in Honduras on account of her gender." While noting Garcia-Nuñez's age when she arrived in the United States as well as other equitable considerations, the BIA determined that there was no reason to

No. 16-60140

exercise its *sua sponte* authority.  Garcia-Nuñez timely filed a petition for review.

## II.

In reviewing the denial of a motion to reopen removal proceedings, we apply a highly deferential abuse-of-discretion standard. *Hernandez-Castillo v. Sessions*, 875 F.3d 199, 203 (5th Cir. 2017).  "'[S]o long as [the Board's decision] is not capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach,' we must affirm the Board's decision." *Singh v. Gonzales*, 436 F.3d 484, 487 (5th Cir. 2006) (alterations in original) (citation omitted).  We review the BIA's factual findings under the substantial-evidence standard, which means that we cannot reverse the BIA's factual determinations unless the evidence "compels a contrary conclusion." *Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009).  In evaluating a denial of a motion to reopen, we review the BIA's order and also will evaluate the immigration judge's underlying decision if it influenced the BIA's opinion. *Hernandez-Castillo*, 875 F.3d at 204.

## III.

## A.

On appeal, Garcia-Nuñez argues that because she did not receive proper notice of her removal hearing, the BIA erred in upholding the denial of her motion to reopen.[2]  An order of removal may be rescinded only: (1) upon a

---

[2] Garcia-Nuñez also argues that the notice to appear was defective because it did not specify the date and time of her hearing.  However, Garcia-Nuñez failed to raise this argument before the BIA.  Under 8 U.S.C. § 1252(d)(1), a petitioner must exhaust her administrative remedies before we can review a final order of removal.  Exhausting administrative remedies here requires raising an issue before the BIA in a motion to reopen; failure to do so acts as a jurisdictional bar to our review. *Wang v. Ashcroft*, 260 F.3d 448, 452–53 (5th Cir. 2001) (noting that the petitioner did not argue before the BIA in his motion to reopen that "exceptional circumstances" warranted the exercise of the BIA's *sua sponte*

motion to reopen filed within 180 days after the date of the removal order if the alien shows that the failure to appear at the removal hearing was because of "exceptional circumstances"; or (2) upon a motion to reopen filed "at any time" if the alien shows that she did not receive proper notice or was in federal or state custody and the failure to appear was through no fault of her own. 8 U.S.C. § 1229a(b)(5)(C). Because Garcia-Nuñez filed her motion to reopen nine years after the removal order, and because she has not shown that she was unable to attend her hearing due to being in federal or state custody, the only basis for rescission of the removal order is lack of notice.

A notice of removal proceedings should be personally served on the alien, but may be mailed to the alien or her attorney when personal service is not practicable. 8 U.S.C. § 1229(a)(1)–(2). An alien who fails to appear at a removal proceeding shall be ordered removed *in abstentia*, so long as the government shows by "clear, unequivocal, and convincing evidence" that the alien is removable and that she or her attorney was provided written notice. 8 U.S.C. § 1229a(b)(5)(A). "On a motion to reopen, . . . the focus is whether the alien actually received the required notice and not whether the notice was properly mailed." *Ojeda-Calderon v. Holder*, 726 F.3d 669, 673 (5th Cir. 2013) (holding that the BIA did not abuse its discretion in charging the petitioner with receiving a notice of hearing, because the petitioner's unsupported denial of receipt was insufficient to rebut the strong presumption of delivery associated with service by certified mail).

---

authority, and therefore holding that this court lacked jurisdiction to consider the issue on appeal). Because Garcia-Nuñez failed to raise the argument before the BIA, we have no jurisdiction to review her argument that the notice to appear was defective.

For the sake of legal clarity, however, we note our holding in *Gomez-Palacios* that a notice to appear "need not include the specific time and date of a removal hearing in order for the statutory notice requirements to be satisfied; that information may be provided in a subsequent [notice of hearing]." *Gomez-Palacios v. Holder*, 560 F.3d 354, 359 (5th Cir. 2009).

No. 16-60140

While there is a presumption of delivery when a notice of hearing is sent by mail, "[t]he presumption of valid service via regular mail is weaker than that for service via certified mail." *Hernandez v. Lynch*, 825 F.3d 266, 269 (5th Cir. 2016) (holding that the BIA abused its discretion in denying the petitioner's motion to reopen because it failed to consider all the relevant evidence in determining that the petitioner did not rebut the presumption of notice that applies to delivery by regular mail). With certified mail, "a strong presumption of effective service arises that may be overcome only by the affirmative defense of nondelivery or improper delivery by the Postal Service." *Maknojiya v. Gonzales*, 432 F.3d 588, 589 (5th Cir. 2005) (remanding to the BIA because the immigration judge applied the strong presumption of delivery for certified mail to a case involving delivery by regular mail).

With regular mail, the immigration judge and the BIA must consider all submitted evidence in determining whether an alien has rebutted the presumption of delivery. *Hernandez*, 825 F.3d at 270; *M–R–A–*, 24 I. & N. Dec. 665, 674 (BIA 2008). "[A]n alien's statement in an affidavit that is without evidentiary flaw may be sufficient to rebut the presumption of effective service." *Hernandez*, 825 F.3d at 269. However, when a notice of hearing "reaches the correct address but does not reach the alien through some failure in the internal workings of the household, the alien can be charged with receiving proper notice." *Ojeda-Calderon*, 726 F.3d at 673 (quoting *G-Y-R-*, 23 I. & N. Dec. at 189). This is because an alien does not need to "personally receive, read, and understand" a notice of hearing for the notice requirements to be satisfied. *See G-Y-R-*, 23 I. & N. Dec. at 189 (stating this principle in the context of a notice to appear). Rather, "[a]n alien can, in certain circumstances, be properly charged with receiving notice, even though he or she did not personally see the mailed document." *Id.*

7

No. 16-60140

Here, Garcia-Nuñez was sent a notice of hearing by regular mail.  Thus, the weaker presumption of delivery applies, and the immigration judge and the BIA must consider all relevant evidence submitted.  Because the BIA expressly adopted and affirmed the immigration judge's decision in this case, we review the immigration judge's decision here.  The immigration judge considered the evidence Garcia-Nuñez submitted and found that the notice was delivered to the correct address, but that someone then returned it.  Moreover, the immigration judge relied on *G-Y-R-* for the proposition that a "failure in a household's internal workings" does not preclude charging an alien with receiving proper notice, so long as the notice was sent to the correct address.

Unlike *Maknojiya*, this is not a case of potentially failed delivery.  *See Maknojiya*, 432 F.3d at 589 (stating that there was no copy of an addressed envelope in the record or any other indication that the notice of hearing actually was delivered).  Rather, the immigration judge found this to be a case of failed internal workings of a household, and under our deferential standard of review, we cannot say the judge erred in so doing.  In light of the handwritten statement on the envelope containing the notice of hearing, the immigration judge found that delivery occurred at the address Garcia-Nuñez provided.  To the extent that Garcia-Nuñez contends that the notice of hearing was undelivered, this argument lacks evidentiary support.  The immigration judge determined that the post office stamp "not deliverable as addressed, unable to forward" does not mean that the notice was never delivered.  Rather, the immigration judge found that notice was delivered but returned at the request of an unidentified person at the address Garcia-Nuñez provided.  Under an abuse-of-discretion standard, we cannot say these findings were error.

Garcia-Nuñez also argues that notice was inadequate because she never personally received the envelope containing the notice of hearing. In making this argument, she suggests that delivery of a notice of hearing is improper

8

No. 16-60140

unless signed by the alien or a responsible person at the alien's address. This argument, too, is unavailing. There is no requirement in our caselaw that an alien (or a responsible member of the alien's household) actually view or sign a notice of hearing delivered to the address provided by the alien.[3]

Moreover, the fact that Garcia-Nuñez was not living at the address she provided to the immigration court when the notice of hearing was delivered is immaterial.[4] The government "satisfies the notice requirement for obtaining a removal order when it gives proper notice at the most recent mailing address the alien provided." *Hernandez-Castillo*, 875 F.3d at 204 (holding that when an alien fails to keep the immigration court apprised of her current mailing address, the removal order should not be revoked on the ground that the alien did not actually receive notice of her removal hearing); *Gomez-Palacios*, 560 F.3d at 358 (same); *see also* 8 U.S.C. § 1229a(b)(5). Thus, the BIA did not abuse its discretion in affirming the immigration judge's decision that Garcia-Nuñez received proper notice.

## B.

Garcia-Nuñez next argues that because she provided sufficient evidence of changed country conditions, the BIA erred in upholding the denial of her motion to reopen removal proceedings.[5] It is undisputed that Garcia-Nuñez

---

[3] To the extent Garcia-Nuñez argues that not personally receiving a notice of hearing violates due process, this argument also fails. Garcia-Nuñez cannot establish a due process violation because "there is no liberty interest at stake in a motion to reopen due to the discretionary nature of the relief sought." *Hernandez-Castillo* 875 F.3d 199, 205 (5th Cir. 2017) (quoting *Gomez-Palacios*, 560 F.3d at 361 n.2).

[4] The fact that Garcia-Nuñez was seventeen years old at the time is also immaterial. *Lopez-Dubon v. Holder*, 609 F.3d 642, 646 (5th Cir. 2010) (stating that "[t]he service provision [now at 8 C.F.R. § 103.8(c)(2)(ii)] specifically calls for notice to be served on an adult only when the alien is under 14 years of age").

[5] Garcia-Nuñez cannot challenge the BIA's refusal to exercise its *sua sponte* authority to reopen her removal proceedings because she failed to raise the issue in her opening brief. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its *initial* brief on appeal."). Even if Garcia-Nuñez had made the

No. 16-60140

filed her motion to reopen well beyond the ninety-day time frame established by 8 U.S.C. § 1229a(c)(7)(C)(i). Nevertheless, this ninety-day requirement does not apply if the motion to reopen rests on a request for asylum, withholding of removal under 8 U.S.C. § 1231(b)(3),[6] or relief under the U.N. Convention Against Torture, and the motion "is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.23(b)(4)(i). The motion to reopen must: (1) state the new facts that will be proven at a hearing to be held if the motion is granted; (2) be supported by affidavits or other evidentiary material; and (3) be accompanied by the appropriate application for relief and all supporting documentation. 8 C.F.R. § 1003.23(b)(3). If the petitioner cannot make the proper showing, the motion is subject to the ninety-day limitation. *See* 8 U.S.C. § 1229a(c)(7)(C)(i).

As a number of our unpublished decisions demonstrate, a petitioner bears a heavy burden to show changed country conditions for purposes of reopening removal proceedings.[7] Showing changed country conditions

---

argument, we lack jurisdiction to review the issue, as we lack jurisdiction to review an immigration judge's or the BIA's refusal to reopen removal proceedings *sua sponte*. *Hernandez-Castillo*, 875 F.3d at 206–07.

[6] This statutory provision states that, subject to the exceptions in subparagraph (B), "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3).

[7] *See, e.g.*, *Garcia-Perez v. Holder*, 558 F. App'x 343, 347–48 (5th Cir. 2013) (holding that the immigration judge did not abuse his discretion in rejecting a claim of changed country conditions where the petitioner's evidence described conditions in Honduras that existed prior to the date of the removal hearing); *Thomas v. Holder*, 396 F. App'x 60, 61 (5th Cir. 2010) (holding that the petitioner had not shown changed country conditions in Jamaica where the evidence merely attested to the political corruption and gang violence that had been an issue since the 1960s).

No. 16-60140

requires making a meaningful comparison between the conditions at the time of the removal hearing and the conditions at the time the alien filed her motion to reopen.[8]  Moreover, showing the continuation of a trend is insufficient to show changed country conditions.[9]  A petitioner must show a material rather than a merely incremental change.[10]  In addition, individual incidents, without evidence that they are part of a larger material change, do not constitute changed country conditions.[11]  Accordingly, showing a change in personal circumstances is also insufficient to show a change in country conditions.[12]

The immigration judge, in considering the documents Garcia-Nuñez submitted, found that Garcia-Nuñez had "not submitted any evidence . . . on country conditions as they existed in 2005, when she was ordered removed."

---

[8] *See Ramos-Lopez v. Lynch*, 823 F.3d 1024, 1026 (5th Cir. 2016) (upholding the BIA's decision rejecting a motion to reopen based on changed country conditions where the petitioner showed that the number of women murdered in Guatemala had recently been increasing but failed meaningfully to compare the conditions at the time of her removal hearing with the conditions at the time of her motion to reopen).

[9] *Singh v. Lynch*, 840 F.3d 220, 222 (5th Cir. 2016) (stating that "[a] motion to reopen can be denied where the evidence of changed conditions shows only a continuance of ongoing violence in the home country").

[10] *See Escalante-Alvarez v. Lynch*, 654 F. App'x 167, 168 (5th Cir. 2016)  (holding that despite the petitioner's argument that violence against women, especially murder, had "increased dramatically," the evidence submitted "reflects that violence against women has been, and remains, an ongoing problem in Honduras"); *Hossain v. Lynch*, 603 F. App'x 345, 346 (5th Cir. 2015) (holding that evidence showing violence was "ongoing or increased only incrementally . . . is insufficient to show that the conditions materially changed in a manner warranting reopening").

[11] *See Hossain*, 603 F. App'x at 346 (stating that "a single instance of brutal violence does not compel a conclusion that political violence has escalated generally"); *Ugochukwu v. Holder*, 547 F. App'x 522, 523 (5th Cir. 2013) (the fact that the petitioner's family's home was burned after his removal hearing did not show a material change in country conditions).

[12] *See Singh*, 840 F.3d at 222–23 (footnote omitted) (holding that the petitioner's claim that he feared for his safety upon returning to India because the Indian police had targeted him amounted to "a change in personal circumstances and [did] not constitute changed country conditions").  Garcia-Nuñez argues that because she was seventeen years old at the time of her removal hearing and twenty-six years old at the time she filed her motion to reopen, a return to Honduras will mean experiencing dangers she would not have faced as a seventeen-year-old.  However, this is an argument based on changed personal circumstances; such circumstances do not constitute changed country conditions.

11

The immigration judge's finding on this point has support in the record.[13] Moreover, even though Garcia-Nuñez did not show a meaningful comparison, the immigration judge acted within his discretion in taking administrative notice of country conditions in 2005 based on a report on Honduras by the State Department.[14] *See Hossain v. Lynch*, 603 F. App'x 345, 346 (5th Cir. 2015). Having taken notice of the conditions in Honduras in 2005, the immigration judge found that "while conditions in Honduras have worsened in some respects since [Garcia-Nuñez] was ordered removed, violence against women was 'widespread' even in 2005." According to the immigration judge, "it does not appear that the relevant country conditions to which [Garcia-Nuñez] alludes would affect her in a significantly different way than when she departed Honduras." Thus, the immigration judge found that Garcia-Nuñez had "failed to meet her burden to make a prima facie case of a change in country conditions."

Based on the record, we cannot say that the BIA's order affirming the immigration judge's decision was "utterly without foundation in the evidence." *Singh*, 436 F.3d at 487. Nor can we say that the evidence "compels a contrary conclusion." *Gomez-Palacios*, 560 F.3d at 358. Accordingly, we are not at liberty to grant the petition.

---

[13] The only evidence in the record on appeal that suggests a meaningful comparison between past and present conditions in Honduras is the declaration of Claudia Herrmannsdorfer. However, this declaration was not part of the record before the immigration judge; rather, Garcia-Nuñez filed it as an attachment to her opening brief before the BIA. Thus, we do not consider Herrmannsdorfer's declaration in evaluating whether the BIA abused its discretion. *See Hossain*, 603 F. App'x at 347 (holding that because the BIA is barred from making findings of fact, the record on appeal to the BIA is limited to the record before the immigration judge); *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 409–10 (5th Cir. 2010) (same).

[14] Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State, *Honduras Country Reports on Human Rights Practices – 2005* (Mar. 2006), www.state.gov/j/drl/rls/hrrpt/2005/61732.htm.

No. 16-60140

We do not hold today that a significant increase in violence against women can never constitute a change in country conditions justifying waiver of the deadline for reopening. We hold only that when as here, there is some evidentiary foundation for concluding that the increase in violence is incremental but not a material change, the immigration judge and BIA did not abuse their discretion in denying reopening. Reasonable minds may disagree over whether an increase in violence of a certain degree over a certain number of years counts as a material change in the condition of a country. Reasonable disagreement, however, is not our standard. We must ask whether the BIA's conclusion, in adopting the immigration judge's determinations, is "utterly without foundation in the evidence." *Singh*, 436 F.3d at 487. On the record before us, we cannot say the BIA abused its discretion.[15]

IV.

Therefore, the BIA did not abuse its discretion in upholding the immigration judge's denial of the motion to reopen removal proceedings and in rejecting Garcia-Nuñez's claims regarding lack of notice and changed country conditions. Accordingly, we DENY Garcia-Nuñez's petition for review.

---

[15] To the extent that Garcia-Nuñez's request for *sua sponte* reopening is based on her having a husband and child who are United States citizens, we note that requests for prosecutorial discretion are the province of Immigration and Customs Enforcement and are not properly part of this appeal. We express no view on the merits of that request.