FILED
United States Court of Appeals
Tenth Circuit

February 22, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ENIL NOE MACIAS CHEBES,

Petitioner,

v.

ROBERT M. WILKINSON, Acting
Attorney General of the United
States,*

Respondent.

No. 20-9515
(Petition for Review)

_____

**ORDER AND JUDGMENT\*\***
_____

Before **BACHARACH**, **LUCERO**, and **PHILLIPS**, Circuit Judges.
_____

The term "notice" often derives its meaning from the context. The

context here involves a motion to reopen proceedings when a noncitizen is

---

\*      During the pendency of this appeal, Mr. Robert M. Wilkinson became
Acting Attorney General of the United States. We've thus substituted
General Wilkinson as the respondent. *See* Fed. R. App. P. 43(c)(2).

\*\*      We conclude that oral argument would not materially help us to
decide the appeal. *See* Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G).
So we have decided the appeal based on the record and the parties' briefs.

       Our order and judgment does not constitute binding precedent except
under the doctrines of law of the case, res judicata, and collateral estoppel.
But the order and judgment may be cited for its persuasive value if
otherwise appropriate. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

ordered removed in absentia. In this context, immigration judges can rescind removal orders upon proof that the noncitizens didn't receive notice of their removal hearings. 8 U.S.C. § 1229a(b)(5)(C)(ii). But what if the noncitizens live in others' homes and the homeowners don't give the noncitizens their mail? Have the noncitizens received their notices?

This was the issue for Mr. Macias Chebes. Mr. Chebes's removal hearing was set on September 12, 2013. At the time, he was living with his aunt, whose address he had provided for the notice. The postal service properly delivered Mr. Chebes's notice to his aunt's address. She received the notice but didn't give it to Mr. Chebes. No one attributes ill motives to the aunt; she attributes the lapse to her condition, suffering from thyroid cancer and depression.

Irrespective of her reasons, Mr. Chebes didn't know about the hearing date; so he didn't appear, and the immigration judge ordered removal in absentia. Mr. Chebes tried to reopen the removal proceedings, pointing out that he hadn't seen the notice. The issue is whether Mr. Chebes received the notice through its delivery to the aunt's house. *See* 8 U.S.C. § 1229a(b)(5)(C)(ii). On this issue, Mr. Chebes bears the burden. *Gurung v. Ashcroft*, 371 F.3d 718, 722 (10th Cir. 2004).

The Board of Immigration Appeals concluded that Mr. Chebes had not satisfied his burden, relying on its prior opinion in *In re G-Y-R-*, 23 I. & N. Dec. 181, 189 (BIA 2001) (en banc). There the Board had

2

addressed the noncitizen's obligation to provide an address to the Immigration and Naturalization Service. *Id.* at 186. In discussing what constitutes a sufficient address, the Board considered whether a noncitizen obtains notice when it is delivered to the right address but is mishandled within the household. *Id.* at 189. In this situation, the Board commented that the noncitizen receives the notice even without personally seeing it. *Id.* The Board applied this language to Mr. Chebes, concluding that he had received the notice even if his aunt had not given it to him. Mr. Chebes argues that the Board erred in applying this language from *G-Y-R-*. We disagree.

We review the Board's conclusion under the abuse-of-discretion standard. *Infanzon v. Ashcroft*, 386 F.3d 1359, 1362 (10th Cir. 2004). In applying this standard, we treat a legal error as an abuse of discretion. *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 n.9 (10th Cir. 2004).

As Mr. Chebes points out, reopening is appropriate when the noncitizen did not actually receive the notice. *Matter of M-R-A-*, 24 I. & N. Dec. 665, 672 (BIA 2008). But when the notice reaches the right house but not the noncitizen, has the noncitizen "actually received" the notice? We answer "yes."

To reopen the removal proceedings, Mr. Chebes needed to show that he had not received a "notice in accordance with Paragraph 1 or 2" of 8 U.S.C. § 1229(a). 8 U.S.C. § 1229a(b)(5)(C)(ii). Paragraph 2 permits

3

notice by mail (8 U.S.C. § 1229(a)(2)(A)), but doesn't require personal service. And service by mail is sufficient if it is sent to the noncitizen's last known address. *Gurung v. Ashcroft*, 371 F.3d 718, 721 (10th Cir. 2004).

Mr. Chebes argues that to reopen the proceedings, he needed only to show that he hadn't personally received the notice. For this argument, he relies on *Gurung v. Ashcroft*, 371 F.3d 718 (10th Cir. 2004), and *Matter of M-R-A-*, 24 I. & N. Dec. 665 (BIA 2008). These opinions do not apply. *M-R-A-* differs: there the noncitizen presented evidence that the notice had not been received at his address of record. 24 I. & N. Dec. at 666. And in *Gurung*, the noncitizen relied on a conclusory assertion that he hadn't received the notice. 371 F.3d at 722. Though the context was different, we suggested in *Gurung* that "actual receipt" takes place when the notice is delivered to the right address. To support a claim that he did not receive notice, we said that the noncitizen had to show improper delivery or nondelivery that wasn't "due to the noncitizen's failure to provide an address where he could receive mail." *Id.*

Mr. Chebes didn't show improper delivery or nondelivery, for he acknowledged that his aunt had received the notice. *See Nunez v. Sessions*, 882 F.3d 499, 507 (5th Cir. 2018) (distinguishing between "potentially failed delivery" and a failure of the "internal workings of a household"). His claim rests on the failure of his aunt to give him mail that had been

4

delivered to his residence. In *G-Y-R-*, the Board concluded that this sort of error does not invalidate notice by mail. *See* pp. 2–3, above.

The Board has applied *G-Y-R-* when deciding whether a noncitizen has "received" a notice for purposes of a motion to reopen. *In re M-D-*, 23 I. & N. Dec. 540, 540, 547 (BIA 2002). The two circuits to address the issue have also applied *G-Y-R-* when addressing motions to reopen. *See Nunez*, 882 F.3d at 506 (applying *G-Y-R-* to determine whether a noncitizen received notice for purposes of a motion to reopen); *Elmquist v. Mukasey*, 265 F. App'x 619, 619 (9th Cir. 2008) (per curiam) (applying *G-Y-R-* to uphold the denial of a motion to reopen when the notice was delivered to the correct address). We agree with these circuits. *G-Y-R-* didn't address a motion to reopen, but explained that a notice is received even when it's mishandled by someone at the noncitizen's address. *See* pp. 2–3, above.

Mr. Chebes argues that even if the Board had applied the right legal test, we must remand for failure to consider various factors affecting the existence of actual receipt of the notice. *See Matter of M-R-A-*, 24 I. & N. Dec. 665, 674 (BIA 2008). But Mr. Chebes conceded his aunt's receipt of the notice that had been delivered to the correct address. Given this concession, other factors wouldn't have affected the Board's refusal to reopen the proceedings.

\* \* \*

5

We conclude that the Board acted within its discretion in upholding the denial of Mr. Chebes's motion to reopen.

Entered for the Court



Robert E. Bacharach
Circuit Judge