# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 14, 2022

Lyle W. Cayce
Clerk

No. 19-60793

Blas Eduardo Garcia,

*Petitioner*,

*versus*

Merrick Garland, U.S. Attorney General,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A095 236 911

Before Jolly, Higginson, and Engelhardt, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

Blas Eduardo Garcia petitions for review of two Board of Immigration Appeals ("BIA") orders denying his motions to reopen. For the reasons set forth below, we DENY his petitions.

## I.

Garcia is a native and citizen of Mexico who first entered the United States in 1994. He received administrative voluntary departure in 2001 and subsequently returned to the United States without having been admitted or paroled. In 2004, Garcia was sent a notice to appear ("NTA") charging him

No. 19-60793

as subject to removal under 8 U.S.C. § 1182(a)(6)(A)(i). The NTA listed "a date to be set" and "a time to be set." In 2007 an Immigration Judge ("IJ") ordered Garcia removed from the United States. The BIA affirmed the removal order in 2008. Garcia was deported in 2010 and thereafter returned without inspection.

In September 2018, Garcia filed a motion to reopen with the BIA. He argued in part that, under both *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), and the plain meaning of 8 U.S.C. § 1229(a)(1)(G)(i), his NTA was deficient for failing to state the time and date of his removal proceedings. The BIA denied the motion, concluding in part that it was time-barred and that reopening the proceedings under *Pereira v. Sessions* was foreclosed by *Pierre-Paul v. Barr*, 930 F.3d 684 (5th Cir. 2019).

Garcia then filed a second motion to reopen seeking to apply for asylum and withholding of removal based on changed country conditions in Mexico. Garcia stated that he was recently diagnosed with HIV and was receiving antiviral treatment. He argued that country conditions and his own personal circumstances had changed since 2007 and that because of his diagnosis, he would be perceived as a member of the LGBT community and would accordingly face a substantial risk of persecution and/or torture on account of his membership in the particular social groups of: (1) "[h]omosexuals in Mexico (imputed)"; (2) "[i]ndividuals in Mexico who are HIV positive"; and (3) "HIV positive men in Mexico." The BIA denied the motion. The BIA concluded that the motion to reopen was untimely and that the evidence Garcia submitted failed to demonstrate the kind of materially changed country conditions that would warrant an exception to the time limit for motions to reopen. Rather, the submitted documents showed the "continuation of the same or similar conditions or circumstances" as those existing at the time of Garcia's removal hearing in 2007. The BIA further determined that Garcia had "not made a prima facie showing that he will

No. 19-60793

suffer mistreatment amounting to persecution in Mexico on account of a protected ground so as to make him eligible for asylum or withholding of removal" and that he had "not made a prima facie showing that he will more likely than not be tortured by, at the instigation of, or with consent or acquiescence of" the Mexican government.

Garcia now challenges both denials.

## II.

Generally, we review only the BIA's decision, "unless the IJ's decision has some impact on the BIA's decision." *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009). Here, neither BIA decision referenced the IJ's decision. We review the denial of a motion to reopen "under a highly deferential abuse-of-discretion standard." *Fuentes-Pena v. Barr*, 917 F.3d 827, 829 (5th Cir. 2019). "However, we review the legal conclusions underlying that decision *de novo* and the factual findings for substantial evidence, reversing when the record compels a different finding." *Inestroza-Antonelli v. Barr*, 954 F.3d 813, 815 (5th Cir. 2020) (citing *Fuentes-Pena*, 917 F.3d at 829).

## III.

Garcia has filed two petitions for review in this court. In the first, he challenges the BIA's denial of his first motion to reopen, renewing his argument that the NTA was "defective." In the second, he challenges the BIA's determination that he did not show changed country conditions. We analyze each in turn.

## A.

Garcia first argues that "the central issue in this case is whether Petitioner was entitled to reopening and termination of his removal order

No. 19-60793

based on *Pereira*, 138 S. Ct. 2105."[1] Garcia claims that under both *Pereira* and the plain meaning of 8 U.S.C. § 1229(a)(1)(G)(i),[2] the immigration court lacked jurisdiction to hold removal proceedings because Garcia's NTA did not include the time or date of his removal hearing.

In *Pereira v. Sessions*, the Supreme Court held that an NTA that does not provide the time and place of removal proceedings, and thus does not comply with the requirements set forth in § 1229(a), does not stop the 10-year continuous-presence clock set forth in 8 U.S.C. § 1229b(d)(1) (the "stop-time rule"). 138 S. Ct. at 2109-10. In *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021), the Court built on its reasoning in *Pereira*. Analyzing § 1229b(d)(1), which states that the stop-time rule is triggered "when the alien is served a notice to appear under [section 1229(a)]," and § 1229(a)(1), which states that "written notice . . . shall be given . . . to the alien . . . specifying" the time and place of their hearing (among other details), the Court held that "a notice to appear" requires a single notice. *Id.* at 1480, 1486. Accordingly, subsequent documents specifying the date and time of a hearing could not cure the defective original notice and trigger the stop-time rule. *Id.* at 1478, 1482, 1486.

After the *Pereira* decision but before the *Niz-Chavez* decision, this court published *Pierre-Paul v. Barr*, 930 F.3d 684 (5th Cir. 2019). In that case, we held in part that an NTA constituted a valid charging document even without the time, date, or place of the initial hearing and that even if such an

---

[1] Garcia acknowledges that his argument regarding *Pereira*'s application was addressed by this court in *Pierre-Paul v. Barr*, 930 F.3d 684 (5th Cir. 2019), and thus is foreclosed. He raised the issue to preserve it. Because we observe that subsequent cases, albeit not cited to us by either party, have developed the landscape in this area, we address the issue.

[2] More specifically, Garcia argues that regulations 8 C.F.R. § 1003.15(b) and 1003.18(b) conflict with the plain text of the statute.

NTA were not sufficient, it could be cured by subsequent notices. *Id.* at 690-91. In reaching this outcome, we independently held that the regulations, not § 1229(a), "govern what a notice to appear must contain to constitute a valid charging document." *Id.* at 689-90.

Two recent cases from this court shed light on *Pierre-Paul*'s continuing vitality in the aftermath of *Niz-Chavez*. In the first, *Maniar v. Garland*, we addressed Maniar's argument that "neither the IJ nor the BIA ever acquired jurisdiction over his removal proceedings because his notice to appear was defective" under § 1229(a)(1)(G)(i), given that the NTA failed to name the time and place of future removal proceedings. 998 F.3d 235, 242 (5th Cir. 2021). In response, we reiterated *Pierre-Paul*'s holding that:

> It is "the regulations, not 8 U.S.C. § 1229(a), [that] govern what a notice to appear must contain to constitute a valid charging document." And "[u]nder the regulations, a notice to appear is sufficient to commence proceedings even if it does not include the time, date, or place of the initial hearing."

*Id.* (quoting *Pierre-Paul*, 930 F.3d at 693) (alteration in original). We then went on to specifically address which sections of *Pierre-Paul* were still good law in a footnote, explaining that *Niz-Chavez* involved an NTA's relationship to the stop-time rule, not its use as a charging document. *Id* at 242 n.2. Thus, while "*Niz-Chavez* undermines one of the rationales of our decision in *Pierre-Paul*—namely, that a two-step process comports with relevant statutory language," the case "does not dislodge our ultimate holding in *Pierre-Paul* that it is the regulations, not 8 U.S.C. § 1229(a), [that] govern what a notice to appear must contain to constitute a valid charging document." *Id.* (internal quotation marks omitted) (alteration in original). Accordingly, we repeated our conclusion that "*Pereira* does not extend outside the stop-time rule context." *Id.*

We further clarified our holding in *Rodriguez v. Garland*, 15 F.4th 351 (5th Cir. 2021). In that case, we examined 8 U.S.C. § 1229a(b)(5)(C)(ii), which states that an *in absentia* removal order may be rescinded "upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with [8 U.S.C. § 1229(a)]." *Id.* at 354 (alteration in original). We determined that "[w]hile the controversy in *Niz-Chavez* focused on the stop-time rule, the Supreme Court interpreted § 1229(a) separately from the stop-time statute." *Id.* at 355. Therefore, other statutes that reference § 1229(a) implicate the textual analysis undertaken by the Supreme Court in *Niz-Chavez. Id.* We then distinguished *Maniar*:

> Both the recission of an in absentia order provision and the stop-time rule provision specifically reference the § 1229(a) notice requirements. The Court's separate interpretation of the § 1229(a) notice requirements in *Niz-Chavez* thus applies in the in absentia context. The specific textual reference to § 1229(a) distinguishes these provisions from others we have considered, including § 1227(a)(2)(A) at issue in *Maniar v. Garland*. . . . [B]ecause the provision at issue in *Maniar* does not reference the § 1229(a) notice requirements, we held that a single notice that did not include the date, time, and place of the initial hearing was a valid charging document because it met the regulatory requirements. Unlike the charging document at issue in *Maniar*, the recission of an in absentia order provision at issue here textually references § 1229(a). Under *Niz-Chavez*'s interpretation of § 1229(a), we therefore require a single document containing the required information in the in absentia context.

*Id.* at 355.

Taken together, these cases tell us that Garcia's arguments regarding the deficiency of his NTA are foreclosed. *Maniar* addressed and rejected the argument that an NTA is defective under 8 U.S.C. § 1229(a)(1)(G)(i) where it fails to name the time and place of future removal proceedings. 998 F.3d at

No. 19-60793

242. In doing so, *Maniar* reiterated *Pierre-Paul*'s undisturbed holding that the regulations, not § 1229(a), govern what an NTA must contain to constitute a valid charging document. *Id.* at 242 n.2. Thus, it is not enough for Garcia to argue that the immigration court lacked jurisdiction because his NTA contradicted the plain meaning of the statutory text of 8 U.S.C. § 1229(a)(1)(G)(i). Unlike the petitioner in *Rodriguez*, Garcia is unable to point to a provision that specifically references the § 1229(a) notice requirements. Accordingly, his first petition is DENIED.

B.

In supplemental briefing, Garcia argues that the BIA erred in denying his second motion to reopen based on a request for asylum and withholding of removal.

Ordinarily, a motion to reopen must be filed within ninety days of the BIA's decision. 8 C.F.R. § 1003.2(c)(2). However, this time-limit does not apply to a motion to reopen based on changed country conditions, "if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). To show changed country conditions, petitioners must draw "a meaningful comparison" between the conditions in their home country at the time of the motion to reopen and those at the time of the removal hearing. *Nunez v. Sessions*, 882 F.3d 499, 508 (5th Cir. 2018) (citing *Ramos-Lopez v. Lynch*, 823 F.3d 1024, 1026 (5th Cir. 2016)). A petitioner must show more than "the continuation of a trend," "incremental change" or "individual incidents, without evidence that they are part of a larger material change." *Id.* at 508-09. As noted above, this court reviews a denial of a motion to reopen under the abuse-of-discretion standard. *Id.* at 505. We review factual findings for substantial evidence, and thus accept the BIA's factual findings "unless the evidence is so compelling

7

that no reasonable fact finder could fail to find otherwise." *Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 444 (5th Cir. 2001) (citation omitted). It is the applicant's burden to demonstrate that the evidence compels a contrary conclusion. *Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005).

Garcia has not carried his burden here. In support of his argument that he has shown changed country conditions, Garcia says that he submitted the 2007 and 2018 State Department Country Reports on Mexico in his motion to reopen and points out that the 2018 report mentions violence targeting LGBT persons in its preamble while the 2007 preamble does not. However, comparison of the preambles of the reports is not a "meaningful comparison" between the country conditions at both times, *Nunez*, 882 F.3d at 508, and Garcia has not provided evidence that the reports themselves show more than the continuation of a trend of discrimination and violence against LGBT individuals in Mexico. Nor does the 2018 report contain information specific to the treatment of HIV positive individuals. Additionally, though Garcia also submitted numerous articles and reports, he did not show how any of them, alone or taken together, draw a meaningful comparison between the conditions in Mexico for his asserted social groups at the time of his motion to reopen and those at the time of his removal hearing. Thus, on the record before us, we cannot say the BIA abused its discretion.

Garcia also argues that his diagnosis of HIV was an "intervening factor" that should be considered a change in country conditions. However, a change of personal circumstances cannot alone, without further support

No. 19-60793

from other changed conditions, qualify as changed country conditions. *Nunez v. Sessions*, 882 F.3d 499, 509 & n.12 (5th Cir. 2018).[3]

Because we find that Garcia has failed to show that the BIA abused its discretion in denying his motion to reopen, we do not reach his claims concerning his eligibility for asylum and withholding of removal. *See Ramos-Lopez*, 823 F.3d at 1026. Garcia's second petition is DENIED.

## IV.

For the reasons set forth above, both of Garcia's petitions are DENIED.

---

[3] Because Garcia has not been able to show changed *country* conditions on appeal, we do not reach the question of whether he would be able to present a "hybrid" changed conditions claim. *See, e.g., Rodriguez v. Garland*, 990 F.3d 1205, 1209-10 (9th Cir. 2021) ("[W]hile changes in personal circumstances may be *relevant* to a motion to reopen based on changed country conditions, a petitioner cannot succeed on such a motion that 'relies *solely* on a change in personal circumstances,' without also providing sufficient evidence of related changed country conditions." (citing *Chandra v. Holder*, 751 F.3d 1034, 1037 (9th Cir. 2014))).