# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 7, 2026

Lyle W. Cayce
Clerk

No. 25-60040

Moises Alexander Prado-Majano,

*Petitioner*,

*versus*

Todd Wallace Blanche, *Acting U.S. Attorney General*,

*Respondent*.

_____

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A220 304 422

_____

Before Richman, Engelhardt, and Wilson, *Circuit Judges*.

Kurt D. Engelhardt, *Circuit Judge*:

Moises Alexander Prado-Majano is an asylum seeker from El Salvador. Throughout his immigration proceedings, he filed three motions with the Board of Immigration Appeals. At issue here is the Board's denial of his motion to reopen immigration proceedings. Because Prado-Majano's motion to reopen was untimely and not subject to any exception or equitable tolling, we deny his petition for review.

No. 25-60040

## I.

In May 2022, Prado-Majano, a native of El Salvador, entered the United States without being admitted or paroled and without a valid entry document. After being placed in removal proceedings, Prado-Majano sought asylum and other forms of relief.

Prado-Majano testified that he was forced to join the MS-13 gang. After four years, MS-13 allowed him to leave its membership, but forcibly tattooed him so that he could be later identified by it or a rival gang. Prado-Majano recounted being twice wrongly detained and tortured by Salvadoran police and an extermination group's[1] attempt to kill him for his gang affiliation. The Immigration Judge (IJ) denied all relief and ordered Prado-Majano removed to El Salvador.

While on appeal with the Board, the Department of Homeland Security inadvertently disclosed Prado-Majano's personally identifiable information online. Prado-Majano moved the Board to remand his case so that he could pursue a claim based on the inadvertent disclosure. The Board affirmed the IJ's decision and remanded for the IJ to determine Prado-Majano's eligibility for deferral of removal.

Back in front of the IJ, Prado-Majano's counsel withdrew his application for relief because Prado-Majano claimed to be a citizen of Mexico. The IJ permitted him to withdraw his application for relief and ordered him removed to Mexico, or in the alternative, El Salvador.

Prado-Majano, proceeding *pro se*, again appealed to the Board, arguing that his counsel acted without his consent in withdrawing his application. He

---

[1] "Extermination groups" work with police and gangs to conduct arbitrary detentions and killings.

No. 25-60040

then filed a motion to remand based on previously unavailable evidence showing he was entitled to relief. The Board dismissed Prado-Majano's appeal and denied his motion to remand.

In July 2024, Prado-Majano moved to reopen his immigration proceedings. He argued that the Mexican government could not confirm his Mexican nationality, so he was set to be removed to El Salvador.[2] Prado-Majano submitted new evidence that his father-in-law Elmer Canales Rivera, "El Crook de Hollywood," a former high-ranking official of MS-13, was arrested and extradited to the United States. He argued that his father-in-law's arrest was a change in country conditions that increased his risk of torture if returned to El Salvador because MS-13 believed his father-in-law was providing information to the FBI. He requested that the Board equitably toll his untimely motion due to the ineffective assistance of counsel, his *pro se* status, his diligence in filing the motion, and other considerations.

The Board denied Prado-Majano's motion to reopen because it was untimely. It determined that Prado-Majano failed to submit evidence of changed conditions in El Salvador warranting an exception to the time bar because his father-in-law's cooperation with the United States indicated a change in his personal circumstances, not a change in country conditions in El Salvador. It further declined to equitably toll the deadline for filing the motion because "he d[id] not claim that the untimeliness of the instant

---

[2] At oral argument, Prado-Majano's counsel informed the court that Prado-Majano was removed to El Salvador because the Mexican government could not confirm his nationality. Counsel maintained that Prado-Majano could be removed to Mexico, but it is not apparent from the record whether Prado-Majano could in fact be removed to Mexico.

No. 25-60040

motion [was] due to former counsel's alleged ineffective assistance."

Prado-Majano petitioned for review of the Board's denial of his motion to reopen. The court has jurisdiction to review the Board's decision declining reopening. *Djie v. Garland*, 39 F.4th 280, 282 (5th Cir. 2022).

## II.

When reviewing the Board's denial of a motion to reopen removal proceedings, the court applies a "highly deferential abuse-of-discretion standard." *Lugo-Resendez v. Lynch*, 831 F.3d 337, 340 (5th Cir. 2016) (quoting *Barrios-Cantarero v. Holder*, 772 F.3d 1019, 1021 (5th Cir. 2014)). The court will grant the petition if the Board's decision "is capricious, irrational, utterly without foundation in the evidence, based on legally erroneous interpretations of statutes or regulations, or based on unexplained departures from regulations or established policies." *Id.* (internal quotation marks and citation omitted). Questions of law are reviewed *de novo*. *Garcia v. Garland*, 28 F.4th 644, 646 (5th Cir. 2022). Factual findings are reviewed under the substantial-evidence standard, meaning the court "cannot reverse the BIA's factual determinations unless the evidence 'compels a contrary conclusion.'" *Nunez v. Sessions*, 882 F.3d 499, 505 (5th Cir. 2018) (quoting *Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009)).

## III.

The Immigration and Nationality Act imposes two bars on a non-citizen filing a motion to reopen: (1) the number bar, 8 U.S.C. § 1229a(c)(7)(A), and (2) the time bar, *id.* § 1229a(c)(7)(C)(i). The Government argues that Prado-Majano's motion was barred by both.

No. 25-60040

## A.

The number bar prohibits filing more than one motion to reopen. 8 U.S.C. § 1229a(c)(7)(A).  There is only one exception to the number bar, and it is not at issue here.[3]

The Government argues that Prado-Majano's motion to reopen was number barred because he filed two previous motions with the Board.  Prado-Majano responds that his previous motions did not trigger the number bar because they were motions to remand and no final removal order was in effect.  *See* 8 U.S.C. 1229a(c)(7)(C)(i) ("Except as provided in this subparagraph, the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal.").  He further argues that because the Board did not address the number bar in denying the motion to reopen, pursuant to *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), we should not consider the number-bar issue.  Because we hold that Prado-Majano's motion was time barred, we do not address whether it was number barred.

## B.

The time bar requires a non-citizen to file his motion to reopen within 90 days of entry of a final removal order.  8 U.S.C. § 1229a(c)(7)(C)(i).  The statute provides two exceptions to the time bar.  First, the changed country conditions exception provides that "[t]here is no time limit on the filing of a motion to reopen" for an asylum seeker whose motion "is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not

_____

[3] *See* 8 U.S.C. § 1229a(c)(7)(C)(iv) (excepting battered spouses, children, and parents from the number bar in certain circumstances); *Djie*, 39 F.4th at 284 (holding that there is no exception to the number bar for changed country conditions); *Garcia Morin v. Bondi*, 152 F.4th 626, 635 (5th Cir. 2025) (holding that the number bar cannot be equitably tolled), *cert. denied*, No. 25-693 (U.S. Apr. 20, 2026).

available and would not have been discovered or presented at the previous proceeding." *Id.* § 1229a(c)(7)(C)(ii). Second, as with the number bar, battered spouses, children, and parents are exempt from the time bar in certain circumstances. *Id.* § 1229a(c)(7)(C)(iv). Further, the deadline to file a motion to reopen may be equitably tolled, allowing a non-citizen to file the motion past the 90-day limit. *Lugo-Resendez*, 831 F.3d at 344. Prado-Majano argues both the changed country conditions exception and equitable tolling apply to his motion to reopen.

1.

The time bar does not apply to motions to reopen filed by an asylum seeker whose motion is based on material, previously unavailable evidence of changed country conditions. 8 U.S.C. § 1229a(c)(7)(C)(ii). "[A] petitioner bears a heavy burden to show changed country conditions for purposes of reopening removal proceedings." *Nunez*, 882 F.3d at 508. Prado-Majano failed to carry his burden to show changed country conditions.

For the changed country conditions exception to apply, the petitioner must make a "meaningful comparison between the conditions at the time of the removal hearing" and the conditions at the time he moves to reopen proceedings. *Id.* The change must be material, rather than "merely incremental" or "the continuation of a trend." *Id.* at 508–09. "In addition, individual incidents, without evidence that they are part of a larger material change," are insufficient to show changed country conditions. *Id.* at 509. Thus, "showing a change in personal circumstances is also insufficient to show a change in country conditions." *Id.* To obtain reopening based on a change in personal circumstances, the petitioner must also establish "a dramatic nationwide change." *Martinez-Guevara v. Garland*, 27 F.4th 353, 362 (5th Cir. 2022).

Prado-Majano submitted evidence that his father-in-law, Elmer Canales Rivera, a former high-ranking official in MS-13, was released from prison by Salvadoran officials, arrested in Mexico, and extradited to the United States. Prado-Majano argues that Canales Rivera's arrest was highly public—causing an "uproar" in El Salvador and prompting announcement at a United States press conference attended by the Attorney General, FBI Director, and Secretary of Homeland Security. Prado-Majano argues that he will be tortured if returned to El Salvador because MS-13 believes his father-in-law cooperated with the FBI. An FBI agent stated that because Canales Rivera "witness[ed] . . . Salvadoran Government corruption," his family is at risk of harm there.

While Canales Rivera's arrest and extradition may have highlighted the Salvadoran government's prior dealings with MS-13, these events were not "part of a larger material change" in El Salvador. *Nunez*, 882 F.3d at 509. Prado-Majano may now face more danger in El Salvador, but that is the result of his father-in-law's arrest, not a nationwide change. *See Garcia*, 28 F.4th at 649 (petitioner's HIV diagnosis was a change of personal circumstances that did not qualify as changed country conditions). To establish changed country conditions, Prado-Majano needed to draw a "meaningful comparison" between the conditions in El Salvador at the time of his removal hearing and those at the time of seeking reopening. *Nunez*, 882 F.3d at 508. Prado-Majano's new evidence depicts El Salvador as a country in which government corruption is rampant, citizens are arbitrarily arrested and detained, harsh and life-threatening prison conditions persist, former gang members are at risk of being tortured and killed, and extrajudicial killings are carried out with impunity. But at Prado-Majano's removal hearing, the IJ relied on a country report that noted Salvadoran citizens then experienced "unlawful killings of suspected gang members and others by security forces," "arbitrary arrest[s] and detention[s]," "life-threatening

7

prison conditions," "serious acts of government corruption," "[i]mpunity for official corruption," and violent crimes perpetrated by gangs. In all, the evidence depicts incremental changes which are insufficient to show changed country conditions. *Nunez*, 882 F.3d at 508–09.

Prado-Majano evidenced a change in personal circumstances that "cannot alone, without further support from other changed conditions, qualify as changed country conditions." *See Garcia*, 28 F.4th at 649. Therefore, the Board did not abuse its discretion in finding that Prado-Majano failed to show changed country conditions warranting an exception to the time bar. Finding no exception to the time bar, we next consider whether the Board abused its discretion in declining to equitably toll the motion to reopen.

2.

The deadline to file a motion to reopen may be equitably tolled when the non-citizen establishes "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lugo-Resendez*, 831 F.3d at 344 (internal quotation marks and citation omitted). "The first element requires the litigant to establish that he pursued his rights with reasonable diligence, not maximum feasible diligence," and "the second element requires the litigant to establish that an extraordinary circumstance beyond his control prevented him from complying with the applicable deadline." *Id.* (quotation cleaned up).

Prado-Majano requested that the Board equitably toll his motion to reopen because of the ineffective assistance of his former counsel and other reasons. The Board declined to apply equitable tolling because he did not claim that the untimeliness of the motion was "due to former counsel's alleged ineffective assistance."

No. 25-60040

The Board did not abuse its discretion in refusing to equitably toll the motion.  Prado-Majano generally cited the ineffective assistance of counsel as a basis for equitable tolling, but he did not make any specific allegations of how the ineffective assistance prevented him from filing timely.  A non-citizen seeking tolling must show how the extraordinary circumstance—here, the ineffective assistance of counsel—"stood in his way and prevented timely filing." *Lugo-Resendez*, 831 F.3d at 344 (internal quotation marks and citation omitted).  During proceedings before the IJ, Prado-Majano's former counsel never answered the phone, failed to update him on his case, and promised he would not be deported to El Salvador.  Prado-Majano failed to explain how counsel's alleged ineffective assistance prevented him from timely seeking reopening with the Board, when counsel stopped representing him almost a year prior to him filing the motion.  Without more, the Board did not abuse its discretion in refusing equitable tolling.

Prado-Majano argues that the Board erred by failing to consider the other grounds he asserted warranted tolling: his pro se status, being a Spanish speaker, not having a full copy of his immigration file, and his limited ability to call attorneys and gather evidence.  The Board abuses its discretion when it "fails to provide a reasoned explanation for its decision, ignores or fails to fully address important aspects of an individual's claim, or fails to meaningfully consider relevant evidence." *Sylejmani v. Sessions*, 729 F. App'x 317, 320 (5th Cir. 2018) (citation omitted).  Prado-Majano submitted no relevant evidence of the other alleged grounds for the Board to consider—his evidence focused on changed country conditions and counsel's alleged ineffective assistance.  The Board did not abuse its discretion in failing to consider Prado-Majano's bare argument of other tolling grounds when he provided no evidence supporting his claims.

9

No. 25-60040

IV.

Because Prado-Majano's motion to reopen was untimely and not subject to any exception or tolling, his petition for review is DENIED.