# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60847

United States Court of Appeals
Fifth Circuit

**FILED**
November 8, 2017

Lyle W. Cayce
Clerk

JUAN ANTONIO HERNANDEZ-CASTILLO,

Petitioner,

v.

JEFFERSON B. SESSIONS, III, U. S. ATTORNEY GENERAL,

Respondent.

Petition for Review of an Order
of the Board of Immigration Appeals

Before REAVLEY, ELROD, and SOUTHWICK, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Petitioner Juan Antonio Hernandez-Castillo, a native and citizen of El Salvador, petitions for review of the Board of Immigration Appeals' (BIA) order upholding the denial of his motion to reopen removal proceedings and declining to reopen proceedings *sua sponte* or to grant administrative closure.  Because the BIA did not abuse its discretion in dismissing the petition and declining to administratively close the case and because we lack jurisdiction to review the BIA's refusal to reopen proceedings *sua sponte*, we DENY in part and DISMISS in part Hernandez-Castillo's petition for review.

No. 15-60847

## I.

Petitioner Juan Antonio Hernandez-Castillo, a native and citizen of El Salvador, was apprehended by Border Patrol agents on March 15, 2005, after attempting to enter the United States from Mexico without authorization near Eagle Pass, Texas. The following day, Hernandez-Castillo was personally served with a notice to appear. The notice to appear charged Hernandez-Castillo with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) because he had not been admitted or paroled by the appropriate authorities. The notice to appear informed Hernandez-Castillo that he was required to provide the agency with his full mailing address and telephone number in writing. The notice to appear went on to advise him that he must immediately notify the immigration court, using Form EOIR-33, whenever he changed his address or telephone number during the course of the proceedings, and that he would receive any hearing notices at the address provided. The notice to appear also stated that if he did not submit an EOIR-33 form or otherwise failed to provide an address at which he could be reached, the government would not be required to provide him with written notice of his hearing. Moreover, the notice to appear advised Hernandez-Castillo that failure to attend a designated hearing could result in the immigration judge entering an *in absentia* removal order.

Hernandez-Castillo signed the notice to appear, acknowledging that he had been provided oral notice in Spanish of the time and place of his hearing and the consequences of failing to appear. The Border Patrol released Hernandez-Castillo on his own recognizance due to a lack of detention funds. Hernandez-Castillo informed the Border Patrol agents that he was trying to travel to Los Angeles, California to live with his sister. He provided a phone number, but several attempts to establish contact at this number were unsuccessful. Hernandez-Castillo did not provide a valid United States address.

2

No. 15-60847

On April 26, 2005, the Department of Homeland Security (DHS) filed the notice to appear in immigration court. On May 4, 2005, a hearing was held at which Hernandez-Castillo failed to appear. The immigration judge sustained the charge of removability and ordered Hernandez-Castillo removed to El Salvador *in absentia*. More than nine years later, Hernandez-Castillo, through counsel, filed a motion to reopen his removal proceedings and rescind the *in absentia* removal order. Hernandez-Castillo conceded that he was personally served with a notice to appear that explained his obligation to provide a current telephone number and mailing address and warned him of the consequences of failing to appear at his hearing.

Nevertheless, Hernandez-Castillo contended that he should be excused from his failure to appear because: (1) he did not receive notice of his hearing date; (2) DHS did not detain him to ensure his appearance but instead released him from physical custody despite the fact that he had not provided the agency with a valid address; and (3) the notice to appear was not filed until forty-one days after the date of issue, which made it "unreasonable" to expect that he could provide a valid address prior to the hearing date of May 4, 2005. For the first time, Hernandez-Castillo also alleged that he was requesting to reopen his case so that he could seek asylum because he feared he would be murdered or tortured by gang members if he returned to El Salvador.

The immigration judge denied the motion to reopen removal proceedings, concluding that written notice of the hearing was not required because there was no record that Hernandez-Castillo ever provided the immigration court with an address until he filed his motion to reopen. The immigration judge also found that Hernandez-Castillo had received an admonition in Spanish of the consequences of failing to appear. Moreover, the immigration judge rejected the argument that reopening was required because Hernandez-Castillo was released from custody before the notice to appear was filed with

the immigration court. The immigration judge noted that even in the absence of a charging document, any address provided to the court would have been "placed in a suspense file in the database to be available when a charging document is filed; not returned, rejected or destroyed." The immigration judge concluded that there were no exceptional circumstances warranting a *sua sponte* reopening of the case because, among other things, Hernandez-Castillo failed to provide an address to the court and made no attempt to contact the court after release from custody.

Hernandez-Castillo appealed the immigration judge's decision to the BIA. He argued that the immigration judge had erred in determining that he had failed to meet his burden to provide a valid address and in rejecting his lack-of-notice claim against the government. He further argued that regardless of the BIA's decision as to his other arguments, the BIA should *sua sponte* reopen his proceedings and grant administrative closure of his case based on "humanitarian factors" and his eligibility for withholding of removal and relief under the Convention Against Torture.

The BIA affirmed the immigration judge's decision "for the reasons cited therein," stating that Hernandez-Castillo had failed to fulfill his obligation to provide the immigration court with a valid address and that, consequently, the court was not required to provide notice of the hearing. The BIA agreed with the immigration judge that Hernandez-Castillo's release from custody before he had provided a valid address had "no bearing on his noncompliance with his obligation to provide the [c]ourt with his address." In addition, the BIA found that it was immaterial that the notice to appear was not filed with the court until approximately forty days after Hernandez-Castillo was served, because if he had attempted to provide an address, the court would have placed the address in a suspense file to be available when the charging document was filed. Considering the "totality of the circumstances," which included

Hernandez-Castillo's humanitarian considerations, the BIA upheld the immigration judge's decision.  The BIA found that Hernandez-Castillo had not presented any factors "either individually or in the aggregate," that were "so exceptional as to trigger the limited authority to reopen proceedings sua sponte."  The BIA then denied the request for administrative closure on the grounds that the request did not "meet the standards in *Matter of Avetisyan*, 25 I&N Dec. 688 (BIA 2012)" because Hernandez-Castillo had "not established prima facie eligibility for any form of relief."  Thus, the BIA dismissed the appeal.  Hernandez-Castillo timely filed a petition for review.

## II.

We apply a highly deferential abuse-of-discretion standard in reviewing the denial of a motion to reopen removal proceedings.  *Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009).  As long as the BIA's decision is "not capricious, without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach," we must affirm it.  *Id.* (citing *Singh v. Gonzales*, 436 F.3d 484, 487 (5th Cir. 2006)).  We review the BIA's factual findings under the substantial-evidence test, which prevents us from reversing the BIA's factual determinations unless the evidence compels reversal.  *Id.*  In reviewing the denial of a motion to reopen removal proceedings, we review the BIA's order and will evaluate the immigration judge's underlying decision only if it influenced the BIA's opinion.  *Id.*

## III.

### A.

We begin with the relevant statutory requirements.  Under 8 U.S.C. § 1229a(b)(5)(A), an alien who fails to attend a hearing after written notice has been provided to the alien or the alien's counsel of record shall be ordered removed *in absentia* if the government establishes by "clear, unequivocal, and

convincing evidence" that the written notice was so provided and that the alien is removable. 8 U.S.C. § 1229a(b)(5)(A). The government satisfies the notice requirement for obtaining a removal order when it gives proper notice at the most recent mailing address the alien provided. *Id.* However, no written notice is required if the alien failed to provide a current mailing address. 8 U.S.C. § 1229a(b)(5)(B). Pursuant to 8 U.S.C. § 1229a(b)(5)(C)(ii), an *in absentia* removal order may be rescinded "upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a) of this title." 8 U.S.C. §§ 1229a(b)(5)(C)(ii).

Paragraph (1) of § 1229(a) requires that notice of a removal hearing be given in person or by mail if personal service is not practicable. 8 U.S.C. § 1229(a)(1). The notice must specify the nature of the proceedings against the alien; the legal authority under which the proceedings are conducted; the acts or conduct alleged to be in violation of law; the charges against the alien and the statutory provisions alleged to have been violated; and the alien's right to counsel. 8 U.S.C. § 1229(a)(1)(A)–(E). The notice also must specify the alien's obligation immediately to provide the government with a written record of an address and telephone number (if any) at which he may be contacted regarding the proceedings; the alien's obligation immediately to apprise the government of any change in his address or telephone number; and the "consequences under section 1229a(b)(5) of this title of failure to provide address and telephone information." 8 U.S.C. § 1229(a)(1)(F)(i)–(iii). Finally, the notice must specify the time and place at which the proceedings will be held and the "consequences under section 1229a(b)(5) of this title of the failure, except under exceptional circumstances, to appear at such proceedings." 8 U.S.C. § 1229(a)(1)(G)(i)–(ii).

No. 15-60847

Paragraph (2) of § 1229(a) states that in the case of any change in the time and place of removal proceedings following the original provision or notice, written notice must be given in person, or by mail if personal service is not practicable, specifying the new time or place of the proceedings and the consequences of failing to attend.  8 U.S.C. § 1229(a)(2)(A).  However, paragraph (2) provides an exception: "In the case of an alien not in detention, a written notice shall not be required under this paragraph if the alien has failed to provide the address required . . . ."  8 U.S.C. § 1229(a)(2)(B).

In *Gomez-Palacios v. Holder*, we held that "an in absentia removal order should not be revoked on the grounds that an alien failed to actually receive the required statutory notice of his removal hearing when the alien's failure to receive actual notice was due to his neglect of his obligation to keep the immigration court apprised of his current mailing address."  560 F.3d at 360–61 (citations omitted) (upholding the BIA's determination that the petitioner "was not entitled to rescission of his removal order because his failure to receive actual notice of the time of his postponed hearing was the result of not complying with his obligation to keep the immigration court apprised of his current mailing address," and concluding that "[s]uch a failure is grounds for denying rescission of a removal order under § 1229a(b)(5)(C)(ii)").

Here, Hernandez-Castillo concedes that he was personally served with a notice to appear that explained his obligation to provide a valid telephone number and mailing address and warned him of the consequences of failing to appear at his hearing.  However, he argues that he was not required to provide the government with a viable address because, under the relevant regulations, he did not have to provide his address until the charging document was filed. Because the charging document was filed eight days before the hearing, Hernandez-Castillo argues it was unlikely that notifying the government of his change of address would have resulted in a timely notice of the hearing.

No. 15-60847

Moreover, he contends that even if he had attempted to submit a change of address to the immigration court before the notice to appear was filed, such a submission likely would have been rejected.

In light of the statutory requirements, these arguments are unavailing. There is no deep philosophical chicken-or-egg quandary here as to whether the duty to provide the address comes before the duty to notice or *vice versa.* Indeed, the controlling statutory requirements, of which Hernandez-Castillo had personal notice, obligated him to keep the immigration court apprised of his current contact information.[1] 8 U.S.C. § 1229(a)(1)(F). Hernandez-Castillo failed to provide DHS with a viable mailing address at any time. When an alien fails to provide a viable mailing address to DHS, the government need not provide notice of the alien's hearing. 8 U.S.C. § 1229(a)(2)(B). Therefore, Hernandez-Castillo cannot complain of a lack of notice under the relevant statutes.

Nor does the lack of notice here violate due process, as Hernandez-Castillo suggests. Even assuming *arguendo* that Hernandez-Castillo did not have a duty to provide his address and could establish that he was eligible for relief, he could not establish a due-process violation because "there is no liberty interest at stake in a motion to reopen due to the discretionary nature of the relief sought." *Gomez-Palacios,* 560 F.3d at 361 n.2 (citing *Altamirano-Lopez*

---

[1] Hernandez-Castillo seeks to rely on 8 C.F.R. § 1003.15(d)(1), which provides that if an alien's address is not provided on the notice to appear, "the alien must provide to the Immigration Court where the charging document has been filed, within five days of service of that document, a written notice of an address and telephone number at which the alien can be contacted. The alien may satisfy this requirement by completing and filing Form EOIR–33." 8 C.F.R. § 1003.15(d)(1). Contrary to Hernandez-Castillo's contention, this regulation does not allow an alien to avoid providing a current address until the charging document has been filed. Rather, pursuant to 8 U.S.C. § 1229(a)(1), Hernandez-Castillo's notice to appear required him to provide the government with an address and telephone number at which he could be contacted and to notify the government immediately of any change in address or phone number during the course of removal proceedings.

8

*v. Gonzales*, 435 F.3d 547, 550 (5th Cir. 2006) (stating that "the denial of discretionary relief does not rise to the level of a constitutional violation even if [the moving party] had been eligible for it"); *Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004) (holding that the petitioner's motion to reopen his immigration proceedings "does not allege a violation of his Fifth Amendment right to due process" because failing to receive purely discretionary relief "does not amount to a deprivation of a liberty interest")).

As we stated in *Gomez-Palacios*, "an alien's failure to receive actual notice of a removal hearing due to his neglect of his obligation to keep the immigration court apprised of his current mailing address does not mean that the alien 'did not receive notice' under § 1229a(b)(5)(C)(ii)." 560 F.3d at 360 (citing *Jiang v. Gonzales*, 239 F. App'x 62, 64 (5th Cir. 2007) (unpublished)[2] (holding that because the petitioner "was informed of his duty to provide the immigration court with his address and failed to do so, he was not entitled to notice of the removal hearing"); *Rybakov v. Gonzales*, 235 F. App'x 250, 251 (5th Cir. 2007) (unpublished) (same)).  Thus, we hold that the BIA did not abuse its discretion in upholding the denial of Hernandez-Castillo's motion to reopen removal proceedings.

**B.**

Hernandez-Castillo next argues that the BIA erred in declining to reopen removal proceedings *sua sponte*.  In addition to filing a statutory motion to reopen, an alien can also file a regulatory motion to reopen, invoking the BIA's or immigration judge's discretionary authority to reopen removal proceedings *sua sponte*.  *Gonzalez-Cantu v. Sessions*, 866 F.3d 302, 304 (5th Cir. 2017), *petition for cert. filed*, No. 17-653 (Oct. 26, 2017); *Tarango v. Sessions*, 697 F.

---

[2] Pursuant to Fifth Circuit Rule 47.5.4, unpublished opinions issued on or after January 1, 1996 generally are not precedent, although they may be cited as persuasive authority pursuant to Fed. R. App. P. 32.1(a).

No. 15-60847

App'x 318, 321 (5th Cir. 2017) (unpublished). The Code of Federal Regulations provides that an immigration judge "may upon his or her own motion at any time . . . reopen or reconsider any case in which he or she has made a decision, unless jurisdiction is vested with the Board of Immigration Appeals." 8 C.F.R. § 1003.23(b). The regulations also provide that the BIA "may at any time reopen or reconsider on its own motion any case in which it has rendered a decision." 8 C.F.R. § 1003.2(a). An immigration judge's regulatory authority is governed by § 1003.23(b), while the BIA's regulatory authority is governed by § 1003.2(a). *Gonzalez-Cantu*, 866 F.3d at 304.

Under our existing precedent, however, we lack jurisdiction to review the BIA's decision to decline *sua sponte* reopening. *See Enriquez-Alvarado v. Ashcroft*, 371 F.3d 246, 249–50 (2004) (stating that "[t]he Code of Federal Regulations suggests that no meaningful standard exists against which to judge an [immigration judge's] decision to exercise *sua sponte* authority to reopen deportation proceedings" and thus holding that we lack jurisdiction to review such a decision); *see also Barillas-Rivera v. Lynch*, 668 F. App'x 81, 82 (5th Cir. 2016) (unpublished) (holding that we lack jurisdiction to review the BIA's refusal to reopen removal proceedings *sua sponte* and noting that "[t]he Supreme Court's recent decision in [*Mata v. Lynch*][3] did not disturb our court's precedent on this point. 135 S. Ct. at 2155").

Our precedent here accords with the holdings of at least eight other courts of appeals. *Ali v. Gonzales*, 448 F.3d 515, 518 (2d Cir. 2006); *Calle-Vujiles v. Ashcroft*, 320 F.3d 472, 474–75 (3d Cir. 2003); *Mosere v. Mukasey*, 552 F.3d 397, 400–01 (4th Cir. 2009); *Anaya-Aguilar v. Holder*, 683 F.3d 369, 371–73 (7th Cir. 2012); *Tamenut v. Mukasey*, 521 F.3d 1000, 1004 (8th Cir.

---

[3] The Supreme Court in *Mata v. Lynch* assumed *arguendo* that federal courts of appeals lack jurisdiction to review the BIA's decisions regarding whether to reopen removal proceedings *sua sponte*. 135 S. Ct. 2150, 2155 (2015).

2008) (en banc); *Ekimian v. INS*, 303 F.3d 1153, 1159 (9th Cir. 2002); *Belay-Gebru v. INS*, 327 F.3d 998, 1000–01 (10th Cir. 2003); *Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1294 (11th Cir. 2008).  Therefore, we lack jurisdiction to review the BIA's refusal to reopen *sua sponte* Hernandez-Castillo's removal proceedings.

## C.

Hernandez-Castillo also argues that the BIA erred as a matter of law in denying his motion to administratively close proceedings.  An immigration judge may use administrative closure to remove a case temporarily from his or her active calendar; the BIA may use it to remove a case temporarily from its docket.  *Avetisyan*, 25 I.&N. Dec. 688, 692 (BIA 2012).  As the BIA has stated, "[i]n general, administrative closure may be appropriate to await an action or event that is relevant to immigration proceedings but is outside the control of the parties or the court and may not occur for a significant or undetermined period of time."  *Id.* (footnote omitted).

In the context of denials of administrative closure, we have assumed without explicitly deciding our jurisdiction and have denied relief.  *See, e.g.*, *Momin v. Holder*, 516 F. App'x 366, 367 (5th Cir. 2013) (unpublished) (stating that the petitioners had not made a showing on one of the factors relevant to the administrative-closure determination and therefore holding that the BIA did not abuse its discretion in rejecting their request for administrative closure); *Cantu-Delgadillo v. Holder*, 584 F.3d 682, 686 (5th Cir. 2009) (holding that the BIA properly denied the petitioner's request for administrative closure).

Today we join several of our sister circuits in holding that federal courts of appeals have jurisdiction to review denials of administrative closure.  *See Gonzalez-Vega v. Lynch*, 839 F.3d 738, 741 (8th Cir. 2016) (expressly joining other circuits in holding that federal courts of appeals have jurisdiction to

review denials of motions for administrative closure); *Santos-Amaya v. Holder*, 544 F. App'x 209, 209 (4th Cir. 2013) (unpublished)[4] (reviewing a denial of administrative closure for abuse of discretion); *Vahora v. Holder*, 626 F.3d 907, 918–19 (7th Cir. 2010) (stating that "the decision to grant or deny administrative closure is cut of the same cloth as various other decisions that we review with regularity in both administrative and non-administrative arenas" and therefore holding that the court had jurisdiction to review such decisions); *Garza-Moreno v. Gonzales,* 489 F.3d 239, 242 (6th Cir. 2007) (holding that the court had jurisdiction to review the denial of administrative closure). *But see Diaz-Covarrubias v. Mukasey*, 551 F.3d 1114, 1120 (9th Cir. 2009) (holding that the court lacked jurisdiction to review denials of administrative closure because there was no "sufficiently meaningful standard" against which to judge the BIA's decision); *Lin v. Att'y Gen. of U.S.*, 127 F. App'x 36, 39 (3d Cir. 2005) (unpublished)[5] (holding that the court lacked jurisdiction to review a denial of administrative closure because "[l]ike decisions to *sua sponte* reopen a case, decisions to administratively close cases are decisions that are purely committed to the BIA's or [immigration judge's] discretion").

We believe that the Eighth Circuit's reasoning is particularly cogent here. In *Gonzalez-Vega v. Lynch*, the Eighth Circuit discussed its jurisdictional determination in *Hernandez v. Holder*, 606 F.3d 900 (8th Cir. 2010), in light of the BIA's decision in *Avetisyan.* 839 F.3d at 741. The Eighth Circuit stated that "the BIA in *Avetisyan* supplied a useable standard for reviewing denials of motions for administrative closure. Balancing considerations is a common,

---

[4] The Fourth Circuit permits citations to its unpublished opinions issued on or after January 1, 2007. 4th Cir. R. 32.1(a).

[5] The Third Circuit does not prohibit citations to its unpublished opinions but "by tradition does not cite to its not precedential opinions as authority." 3d Cir. I.O.P. 5.7.

workaday judicial function, even if in a given case the balancing can be difficult." *Id.* Based on the evaluative factors provided in *Avetisyan*, the Eighth Circuit expressly joined other circuits in holding that federal courts of appeals have jurisdiction to review denials of motions for administrative closure.[6] *Id.*

This analysis is persuasive. Unlike a refusal to *sua sponte* reopen proceedings, the denial of a motion for administrative closure does not lack meaningful standards against which to judge the determination. Regarding decisions to reopen proceedings *sua sponte*, the regulations provide that the BIA "may at any time reopen or reconsider on its own motion any case in which it has rendered a decision." 8 C.F.R. § 1003.2(a). Thus, "[t]he regulations vest the decision of whether to sua sponte reopen entirely in the discretion of the immigration judge or the BIA." *Tarango*, 697 F. App'x at 321. By contrast, the BIA has provided standards for evaluating when administrative closure may be appropriate. *Avetisyan*, 25 I.&N. Dec. at 696 (providing six factors and describing how they might appropriately be applied).[7]

---

[6] Moreover, the Immigration Trial Handbook cites the Eighth Circuit's decision in *Gonzalez-Vega v. Lynch* as supporting an alien's ability to appeal a denial of administrative closure. Immigr. Trial Handbook § 5:25 n.17 (Westlaw 2017).

[7] The government argues here that, as with a refusal to *sua sponte* reopen proceedings, we lack jurisdiction to review denials of administrative closure because there are no "meaningful standards of review" for such decisions. The Ninth Circuit has held as much in *Diaz-Covarrubias v. Mukasey*, 551 F.3d 1114, 1117–18, 1120 (9th Cir. 2009). However, the Ninth Circuit decided *Diaz-Covarrubias* before the BIA announced standards for evaluating requests for administrative closure in *Avetisyan*, 25 I.&N. Dec. 688, 696 (BIA 2012). *Cf. Gonzalez-Vega v. Lynch*, 839 F.3d 738, 741 (8th Cir. 2016) (revisiting its decision in *Hernandez v. Holder*, 606 F.3d 900 (8th Cir. 2010), in light of *Avetisyan* and joining other circuits in holding that federal courts of appeals have jurisdiction to review denials of motions for administrative closure). The Ninth Circuit in *Diaz-Covarrubias* analogized a lack of jurisdiction over denials of administrative closure to a lack of jurisdiction over refusals by the BIA to reopen proceedings *sua sponte*. 551 F.3d at 1117–18. However, in light of the factors the BIA provided in *Avetisyan*, this analogy is no longer persuasive.

Moreover, the government cites to the Eighth Circuit's decision in *Hernandez v. Holder* as supporting its argument that we lack jurisdiction to review denials of administrative closure. This is incorrect, as the Eighth Circuit's decision in *Gonzalez-Vega*

No. 15-60847

We have previously applied an abuse-of-discretion standard when reviewing a denial of administrative closure. *See Momin*, 516 F. App'x at 367. We think this appropriate, and we do so today. *Cf. Gonzalez-Vega*, 839 F.3d at 741 (reviewing the denial of a motion for administrative closure for abuse of discretion); *Santos-Amaya*, 544 F. App'x at 209 (same); *Vahora*, 626 F.3d at 919 (same); *Garza-Moreno*, 489 F.3d at 242–43 (same).

The BIA has held that it is appropriate for an immigration judge or the BIA to "weigh all relevant factors presented in the case." *Avetisyan*, 25 I.&N. Dec. at 696. These factors include but are not limited to the following:

> (1) the reason administrative closure is sought; (2) the basis for any opposition to administrative closure; (3) the likelihood the respondent will succeed on any petition, application, or other action he or she is pursuing outside of removal proceedings; (4) the anticipated duration of the closure; (5) the responsibility of either party, if any, in contributing to any current or anticipated delay; and (6) the ultimate outcome of removal proceedings (for example, termination of the proceedings or entry of a removal order) when the case is recalendared before the Immigration Judge or the appeal is reinstated before the Board.

*Id.* By contrast, it would not be appropriate to administratively close proceedings "if the request is based on a purely speculative event or action." *Id.*

As discussed above, the BIA held that Hernandez-Castillo's request for administrative closure "[did] not meet the standards in *Matter of Avetisyan*, 25 I&N Dec. 688 (BIA 2012)[] because he ha[d] not established prima facie eligibility for any form of relief." Hernandez-Castillo argues that the BIA erred by not taking all the factors into account. This argument, however, gives too little weight to the BIA's discretionary authority here. The BIA need not evaluate every factor in detail. Rather, the BIA has discretion to "weigh all

---

revisited *Hernandez* and held that the court has jurisdiction to review denials of administrative closure. *Gonzalez-Vega*, 839 F.3d at 741.

*relevant* factors presented in the case." *Avetisyan*, 25 I.&N. Dec. at 696 (emphasis added).

For example, in *Momin*, we upheld the BIA's denial of a motion to reconsider and refusal to administratively close proceedings. 516 F. App'x at 367. We noted in *Momin* that "[t]he factors to consider when determining whether to administratively close removal proceedings include whether it is likely that the respondent will succeed on any petition, application, or other action he or she is pursuing outside of removal proceedings." *Id.* (citing *Avetisyan*, 25 I.&N. Dec. 688). Finding that the Momins had not shown a likelihood of success on any claims for relief pursued outside of removal proceedings, we denied their petitions for review. *Id.*

Similarly to *Momin*, the BIA here found that Hernandez-Castillo had not established *prima facie* eligibility for any form of relief, an analysis which falls under the third factor in *Avetisyan*—the same factor we considered in *Momin*. 516 F. App'x at 367. As in *Momin*, we hold that the BIA acted within its discretionary authority here.

**IV.**

Accordingly, we DISMISS the petition for review with respect to the claim that the BIA erred in refusing to reopen removal proceedings *sua sponte*. We DENY the petition for review with respect to the claims that the BIA abused its discretion in upholding the denial of the motion to reopen removal proceedings and in declining to administratively close the case.