# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 16, 2022

Lyle W. Cayce
Clerk

No. 20-60406

Leonel Garcia-Avila,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A216 585 072

Before King, Jones, and Duncan, *Circuit Judges*.

Per Curiam:[*]

Leonel Garcia-Avila filed a motion to reopen and reconsider in relation to his immigration proceedings and the Immigration Judge's decision to deny Garcia-Avila cancellation of removal under either 8 U.S.C. § 1229b(b)(1) or § 1229b(b)(2). The Immigration Judge denied Garcia-Avila's motion, and the Board of Immigration Appeals affirmed that

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-60406

decision. He now challenges those decisions here through a petition for review. For the following reasons, the petition for review is DENIED.

**I.**

Leonel Garcia-Avila is a native and citizen of Mexico who entered the United States in 2002 without having been admitted or paroled. He is married to a United States citizen with whom he has three children who are also United States citizens. In October 2018, Garcia-Avila pleaded no contest to a Class B misdemeanor for driving while intoxicated and was placed on probation for one year.

In November 2018, the district attorney's office moved to revoke Garcia-Avila's probation based on allegations that he had violated his probation by: (1) using cocaine, (2) registering a 0.018 blood alcohol level on the Smart Start Mobile Device that had been placed in his vehicle, and (3) failing to complete or register for various treatment programs, community service requirements, and panels. At his probation revocation hearing, Garcia-Avila admitted to some of the charged violations, his probation was revoked, and he was sentenced to six months in jail.

In April 2019, Garcia-Avila was served with a Notice to Appear at removal proceedings by the Department of Homeland Security and was charged as removable under 8 U.S.C. § 1182(a)(6)(A)(i). At a hearing before the Immigration Judge ("IJ"), Garcia-Avila conceded removability and sought cancellation of removal on two grounds: cancellation of removal for certain non-permanent residents under 8 U.S.C. § 1229b(b)(1) ("NPR cancellation")[1] and special cancellation of removal for battered spouses

---

[1] The requirements for NPR cancellation are that the applicant: (1) has been physically present in the United States for a continuous period of ten years immediately preceding the application; (2) has been a person of good moral character; (3) has not been convicted of certain criminal offenses; and (4) that removal of the applicant would result in

No. 20-60406

under the Violence Against Women Act (VAWA) as codified at 8 U.S.C. § 1229b(b)(2) ("VAWA cancellation").[2]

At the hearing, Garcia-Avila testified that he had three United States citizen children and a United States citizen wife who had abused him on two occasions in the past but was no longer abusive. He additionally testified to the hardship that he had faced in his past as well as the hardship both he and his family would suffer should he be returned to Mexico. Regarding his family, he testified that (1) his children would face emotional hardship if he was not around for them in the United States, (2) that his entire family would face financial hardship as he was the primary breadwinner and neither his wife nor elderly in-laws were able to earn enough money to support the family, and (3) that his wife and children would be unable to join him in Mexico due to issues with permits and fears about crime. Specifically as to himself, Garcia-Avila testified about the hardship he had faced during a difficult childhood before he left for the United States at age 17 (including being left by his parents and living with his abusive uncles) and the hardship he would face in the future should he be returned to Mexico, where he has little to no family ties. Garcia-Avila also presented several exhibits, including counselor's evaluations, letters, and drawings, supporting the hardship he and his family would face. During Garcia-Avila's testimony regarding his hardship, the IJ laid out the two differing hardship standards for NPR and

exceptional and extremely unusual hardship to a United States citizen or lawful permanent resident spouse, parent, or child. 8 U.S.C. § 1229b(b)(1).

[2] The requirements for VAWA cancellation are that the applicant: (1) has been battered or subjected to extreme cruelty by a United States citizen or lawful permanent resident (or is the parent of a child who has been subjected to such treatment); (2) has been physically present in the United States for three years immediately preceding the application; (3) has been a person of good moral character; (4) has not been convicted of certain criminal offenses; and (5) that removal of the applicant would result in extreme hardship to the alien or to a child or parent. 8 U.S.C. § 1229b(b)(2)(A).

VAWA cancellation, both in terms of the level of hardship required and the necessary affected individuals, and highlighted each as part of the "disputed issues" in the case.

In addition to testimony about hardship, Garcia-Avila testified about his DWI conviction and probation revocation; this testimony included an explanation that while he had tested positive for cocaine, that test resulted from taking two pain pills of which he did not know the type and for which he did not have a prescription.

At the conclusion of the hearing, the IJ stated that she would deny Garcia-Avila's applications for NPR cancellation and VAWA cancellation. She first addressed the good moral character prong, stating that "the court [could not] ignore the recency of [Garcia-Avila's] DWI conviction" and that his violations of the terms of his probation that led to revocation (including his explanation for the positive cocaine test that the IJ did not find credible) weighed against granting cancellation of removal. The IJ then stated: "Additionally, I don't find that there is extreme hardship to the children, and I don't find that there's exceptional and extremely unusual hardship to the spouse or the children in regards to special cancellation and regular cancellation of removal."

Once she had announced her decision, the IJ stated that she would "take about 45 minutes to write an oral decision that [she would] come back and dictate on the record . . . if [Garcia-Avila's] attorney decide[d] to appeal"; Garcia-Avila then requested voluntary departure. After a recess, the IJ granted Garcia-Avila voluntary departure, and he subsequently waived his right to appeal the IJ's ruling. Because the IJ granted voluntary departure and Garcia-Avila waived his right to appeal, she did not issue her proffered oral decision.

No. 20-60406

After Garcia-Avila departed from the United States, he filed a motion to reopen and reconsider the IJ's decision. The motion to reopen was based on new evidence related to his probation revocation. Specifically, Garcia-Avila pointed to a decision from the Texas Court of Appeals, *Jacobs v. Texas*, 594 S.W.3d 377, 382 (Tex. App.—San Antonio 2019, no pet.), which overturned the probation revocation of a different defendant after finding due process violations occurred during the hearing, which was conducted by the same judge who revoked Garcia-Avila's probation. Garcia-Avila additionally supported his motion with an article in the *San Antonio Express-News* detailing other instances where that judge revoked probation without sufficient evidence or due process during the hearing, as well as a letter from the Bexar County District Attorney's Office stating that it would have opposed revocation of Garcia-Avila's probation should the prosecutor have been able to sufficiently participate in the hearing.[3] In his motion, Garcia-Avila also requested that the IJ reconsider her decision, arguing that the IJ conflated the two different hardship standards for NPR cancellation and VAWA cancellation and did not fully consider the aggregate hardship to both Garcia-Avila's children *and* himself as required when considering VAWA cancellation.

---

[3] We have also taken judicial notice of several facts related to Garcia-Avila's probation revocation that occurred after the Board of Immigration Appeals ("BIA") rendered its decision. Namely, we have noted that the judge who revoked Garcia-Avila's probation has issued Garcia-Avila a writ of habeas corpus to reopen his case and that his probation has been reinstated. We have also taken notice of a Public Admonition and Order of Additional Education issued by the Texas Commission on Judicial Conduct that the judge in question "should be publicly admonished for failing to have a witness sworn, denying the State the opportunity to be heard on the motion to revoke, denying the defendant the right to present evidence, and denying bail pending appeal, in violation of Canon 2A and Canon 3B(8) of the Texas Code of Judicial Conduct."

No. 20-60406

The IJ denied Garcia-Avila's motion. She first declined to reopen the proceedings based on the new evidence, stating that while the evidence demonstrated that Garcia-Avila's "probation may have been wrongfully revoked," that did "not exonerate [him] from the alleged actions that lead [sic] to the revocation of his probation." The IJ also stated that "[i]n announcing its decision, the court primarily noted that it was unable to ignore the recency and serious nature of the respondent's driving while intoxicated conviction," which was unrelated to the later revocation of Garcia-Avila's probation. The IJ then declined to reconsider Garcia-Avila's case, noting that the IJ "explicitly stated on the record that even when considering the hardship to all of [Garcia-Avila's] children, [she] could not find extreme hardship." The IJ also stated that she had "made explicitly clear" that she "was using the VAWA hardship standard" and that the IJ had "duly considered the aggregate hardship to the respondent and his children . . . and concluded [Garcia-Avila's] burden had not been met."

The BIA affirmed the IJ's decision, basing its decision solely on the rationale given by the IJ for denying the motion to reconsider. The BIA stated that it "agree[d] that the [IJ] considered the hardship in the aggregate, under the proper standard for each application of relief" and noted that the IJ "cited the correct standards" for each form of relief considered. The BIA specifically found that Garcia-Avila "was given the opportunity to detail the hardship to his family" and that the IJ "explained the reasons for her denial to the respondent" after which Garcia-Avila waived his appeal. Therefore, the IJ "reasonably believed that the respondent was satisfied with her explanations, and did not issue a formal oral or written decision" and Garcia-Avila subsequently could point only to "the lack of detailed findings" to support his arguments and was unable to "point to any evidence that the [IJ] did not consider." Because the BIA affirmed on these grounds, it stated that it "need not reach the discretionary determination" of Garcia-Avila's

6

No. 20-60406

cancellation of removal nor decide whether the new evidence related to his probation revocation could have changed that determination. Garcia-Avila timely filed a petition for review.

## II.

As an initial matter, we address our jurisdiction to consider this case. The landscape surrounding our jurisdiction over certain BIA decisions has recently been thrown into a state of flux by the Supreme Court's holding in *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062 (2020). Before that decision, we had consistently held that the jurisdictional bar found in 8 U.S.C. § 1252(a)(2)(B)(i), which strips federal courts of jurisdiction to review "any judgment regarding the granting of relief under section . . . 1229b," applied to BIA determinations, including the hardship determination, related to eligibility for cancellation of removal under § 1229b. *See, e.g.*, *Rueda v. Ashcroft*, 380 F.3d 831, 831 (5th Cir. 2004) (per curiam); *Sung v. Keisler*, 505 F.3d 372, 377 (5th Cir. 2007); *Sattani v. Holder*, 749 F.3d 368, 372 (5th Cir. 2014) (per curiam). The Supreme Court in *Guerrero-Lasprilla*, however, held that the Limited Review Provision in 8 U.S.C. § 1252(a)(2)(D), which lifts the above-discussed jurisdictional bar for "constitutional claims or questions of law," applies to "the application of a legal standard to undisputed or established facts" (often called a mixed question of law and fact). *Guerrero-Lasprilla*, 140 S. Ct. at 1067–68.

Recently, in *Trejo v. Garland*, our court issued a narrowly-tailored decision holding that the hardship determination required for a person to be eligible for discretionary cancellation of removal under 8 U.S.C. § 1229b(b)(1)—what we have referred to as NPR cancellation in this opinion—is a mixed question of law and fact that we have jurisdiction to consider. 3 F.4th 760, 764 (5th Cir. 2021). Our decision in *Trejo* was heavily based on the specific statutory language of § 1229b(b)(1), as well as the

7

No. 20-60406

history of that statute, and additionally noted "'that our jurisdiction' to review challenges to a cancellation of removal determination 'turns on the type of issue that an immigrant raises.'" *Id.* at 767 (quoting *Singh v. Rosen*, 984 F.3d 1142, 1148 (6th Cir. 2021)). As *Trejo* demonstrates, the proper path forward in the wake of *Guerrero-Lasprilla* is to consider specific statutes, and the questions deriving from those statutes, to determine whether we have jurisdiction.

We thus note that we have yet to decide whether any questions related to eligibility for VAWA cancellation under 8 U.S.C. § 1229b(b)(2) are subject to § 1252(a)(2)(B)'s jurisdictional bar. And for the purposes of this case, we need not decide that question today. Rather than a direct appeal, we consider here a motion to reopen and reconsider. In doing so, we are limited to considering two questions: (1) for the motion to reopen, whether newly discovered facts or a change in circumstance are material and warrant a new determination for the applicant, 8 U.S.C. § 1229a(c)(7)(B); and (2) for the motion to reconsider, whether errors of fact or law occurred in the original determination that warrant a new determination, 8 U.S.C. § 1229a(c)(6)(C). Neither question calls for us to review any issue affecting the BIA's actual decision related to eligibility for cancellation of removal, as we might on a direct appeal. We instead look only to whether legal errors (such as applying the wrong statutory standard) occurred, whether erroneous factual determinations were made, or whether new evidence calls for a proverbial second bite at the apple (or, more accurately, first bite at a new, freshly ripened apple). Therefore, the jurisdictional question that remains open after *Guerrero-Lasprilla* and *Trejo* is not implicated here.

## III.

We next turn to the merits of the BIA's decision on Garcia-Avila's motion to reopen and reconsider. "We generally have authority to review

only the decision of the BIA," but will additionally consider the underlying decision of the IJ to the extent that decision influenced the BIA. *Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007). Here, the BIA's opinion only considered the arguments raised in Garcia-Avila's motion to reconsider (namely, the question of whether the IJ misapplied the hardship standards) and expressly declined to consider whether the new evidence cited in Garcia-Avila's motion to reopen would change the outcome of the discretionary determination on his cancellation of removal. Therefore, we only consider the BIA's decision on the motion to reconsider, as well as the IJ's decision to the extent it influenced that aspect of the BIA's decision.

We consider a motion to reconsider "under a highly deferential abuse-of-discretion standard." *Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005). We will uphold a BIA decision "as long as it is not capricious, without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009). "We review the BIA's factual findings under the substantial-evidence test, which prevents us from reversing the BIA's factual determinations unless the evidence compels reversal." *Hernandez-Castillos v. Sessions*, 875 F.3d 199, 204 (5th Cir. 2017). For questions of law, we review de novo but "accord[] deference to the BIA's interpretation of immigration statutes unless the record reveals compelling evidence that the BIA's interpretation is incorrect." *Gomez-Palacios*, 560 F.3d at 358.

A motion to reconsider "shall specify the errors of law or fact in the previous order and shall be supported by pertinent authority." 8 U.S.C. § 1229a(c)(6)(C). As opposed to presenting new evidence (as in a motion to reopen), "[a] motion to reconsider contests the correctness of the original decision based on the previous factual record." *Matter of O-S-G-*, 24 I. & N. Dec. 56, 57 (BIA 2006). Here, Garcia-Avila "alleges that [the original

decision] is defective," *id.* at 57, because the IJ applied the wrong standard when considering Garcia-Avila's eligibility for VAWA cancellation and subsequently failed to consider the hardship in the aggregate because she failed to consider the hardship to Garcia-Avila along with the hardship to his children.

We note again that, on a motion to reconsider, we do not address the merits of the BIA or IJ's initial hardship determination and have "virtually no substantive review of the BIA's 'extreme hardship' finding." *Hernandez-Cordero v. U.S. INS*, 819 F.2d 558, 563 (5th Cir. 1987) (en banc). Instead, our task is to "scrutinize the BIA's decision for procedural regularity" and to ensure that the BIA did not abuse its discretion in finding that the IJ applied the proper procedures (including applying the correct law to the correct facts) in reaching her determination. *Id.* We hold that the BIA's decision "that the [IJ] considered the hardship in the aggregate, under the proper standard for each application of relief" was not an abuse of discretion.

Because of the somewhat anomalous procedural nature of this case (which has no initial BIA decision due to the lack of a direct appeal), we must circle back to the initial IJ decision—the BIA, in finding that the hardship standards were properly applied, relied on the IJ's decision on the motion to reconsider, which in turn relied on the IJ's oral pronouncement at the termination of Garcia-Avila's hearing. In reaching its initial hardship determination, it is sufficient that "'*any* consideration has been given' by the BIA to the factors establishing 'extreme hardship'" and therefore the BIA (and, if relied upon by the BIA, the IJ's) adjudicative duty is satisfied as long as it "did not 'utterly fail' to give consideration to the factors pertinent to a

determination of 'extreme hardship.'" *Id.* (quoting *Sanchez v. INS*, 755 F.2d 1158, 1160 (5th Cir. 1985)).[4]

It was not an abuse of discretion to find that standard satisfied. As the BIA notes, Garcia-Avila "was given the opportunity to detail the hardship to his family," including himself; the IJ listened to and engaged with that testimony throughout the hearing. While doing so, the IJ consistently demonstrated that she was considering Garcia-Avila's evidence under two separate standards—one for NPR cancellation, and one for VAWA cancellation. She first demonstrated said consideration when outlining, correctly, the two different standards for each form of relief, including stating the parties were "at issue for the extreme hardship *to the respondent* or a child on the VAWA 42B." Those issues, including hardship to Garcia-Avila himself, were among "the disputed issues" that the IJ specifically identified during Garcia-Avila's testimony.

Next, when issuing her decision, the IJ again applied two different hardship standards—she found that Garcia-Avila was not eligible for either "special cancellation [or] regular cancellation of removal" after first finding no "extreme hardship to the children" and then finding no "exceptional and extremely unusual hardship to the spouse or the children." And then lastly the IJ, in denying the motion to reconsider, again stated she "was using the VAWA hardship standard" and that "[t]he court duly considered the

---

[4] Garcia-Avila argues that our review is more rigorous, and that we must determine that the BIA and/or IJ "has meaningfully addressed and reached a reasoned conclusion on the alien's specific assertions of hardship that are based on evidence." *Ramos v. INS*, 695 F.2d 181, 188 (5th Cir. 1983). But to the extent that *Ramos* presents a more rigorous test, it was abrogated by our later, en banc decision in *Hernadez-Cordero*. *See Phomsavanh v. INS*, No. 94-40208, 1994 U.S. App. LEXIS 43366, at *5 n.1 ("Whatever tension may have existed in [*Ramos* and *Sanchez*], it has been abrogated by our en banc decision in *Hernandez-Cordero*.").

aggregate hardship to the respondent and his children that would be caused by his removal to Mexico and concluded his burden had not been met." At each turn, the IJ demonstrated she was considering two different hardship standards, one stricter than the other, and that Garcia-Avila had failed to satisfy either. Given this record, it was not an abuse of discretion for the BIA to find that "any consideration" had been given to Garcia-Avila's case.

It is of course true that "[c]ommon sense as well as the weight of authority requires that we determine whether the BIA [or IJ] *applied* the correct legal standard, not simply whether it *stated* the correct legal standard." *De Rodriguez v. Holder*, 585 F.3d 227, 235 (5th Cir. 2009) (quoting *Kabba v. Mukasey*, 530 F.3d 1239, 1245 (10th Cir. 2008)). Citing to that simple truth, Garcia-Avila then makes much of the fact that the IJ only referred to Garcia-Avila's children, and not additionally to Garcia-Avila himself, when deciding that the VAWA hardship standard had not been satisfied. But that argument ignores the procedural realities of this case, which we again note are strikingly atypical. Garcia-Avila heard the IJ's decision on his case, including her determination that he had not demonstrated sufficient hardship for either form of relief sought. He had, and was reminded that he had, "every right to appeal [his] case." He then chose not to. We agree with the BIA that, once Garcia-Avila decided to *waive* that right to appeal, the IJ quite "reasonably believed that [Garcia-Avila] was satisfied with her explanations."

In light of that fact, we also fully understand why the IJ could have reasonably thought that there was no reason to provide a more fulsome recitation of her reasoning for the record. After all, the formal process of drafting an opinion exists at least in part "to enable a reviewing court to perceive that [the initial court] has heard and thought and not merely reacted," *Hernandez-Cordero*, 819 F.2d at 563 (quoting *Osuchukwu v. INS*, 744 F.2d 1136, 1142–43 (5th Cir. 1984)), as well to provide the litigants of a

case reasoned explanations so that, when they leave the courthouse, they feel that they have truly had their day in court. If an IJ reasonably expects that there is not going to be an appeal of her decision because the right to that appeal has been waived, the first rationale requires no further explanation of the decision. And when a person has waived his right to an appeal, he similarly represents that he is satisfied with the decision, reasoning and all. In those situations, requiring more would be superfluous. *Cf. In re San Juan Dupont Plaza Hotel Fire Litig.*, 989 F.2d 36, 38 (1st Cir. 1993) (noting that a court should "hesitate to wax longiloquent simply to hear its own words resonate").

Given all of that, Garcia-Avila's contention ultimately boils down to the IJ saying "I don't find that there is extreme hardship to the children" instead of something like "I don't find that there is extreme hardship to the children and the respondent." We agree with the BIA that such a distinction—which ultimately resembles a mere slip of the tongue that, should Garcia-Avila have desired, could have been rectified in the formal decision the IJ spent the better part of an hour preparing while Garcia-Avila decided whether to appeal—does not require reconsideration of Garcia-Avila's case.

## IV.

For the foregoing reasons, the petition for review is DENIED.