# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 7, 2022

Lyle W. Cayce
Clerk

No. 20-60315

Rodolfo Rivera-Flores; Maria Lucrecia Reyes-Oviedo;
Ronald Roney Rivera-Reyes; Jesser Josue Rivera-Reyes;
Norma Marbella Rivera-Reyes,

*Petitioners*,

*versus*

Merrick Garland, U.S. Attorney General,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A208 758 033
BIA No. A208 759 744
BIA No. A206 764 923
BIA No. A208 759 745
BIA No. A208 758 034

Before Graves, Willett, and Engelhardt, *Circuit Judges*.

Per Curiam:*

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-60315

Rodolfo Rivera-Flores ("Rivera"), a native and citizen of Honduras, sought asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") after the Department of Homeland Security charged that he, his wife Maria Lucrecia Reyes-Oviedo ("Reyes"), and their children Ronald Roney Rivera-Reyes, Jesser Josue Rivera-Reyes, and Norma Marabella Rivera-Reyes were removable as aliens present in the United States without being admitted or paroled.[1] The immigration judge ("IJ") and Board of Immigration Appeals ("BIA") rejected his application, so Rivera petitioned for our review. For the reasons stated below, we DENY Rivera's petition.

I

Rivera's argument for asylum centers on his service as an elected official in Honduras, so we begin by reviewing that history, which we draw from the administrative record.

Rivera and his wife, Reyes, were born and lived in Meámbar, Honduras. Rivera ran a store attached to his home and was active in local politics as a member of the Liberal Party since 1995. Historically, Honduras' principal political parties have been the Liberal Party and the National Party. In 2000, Rivera was the Liberal Party candidate for Mayor of Meámbar. Though Rivera lost this election to the National Party candidate, he was automatically appointed as the First Council Member of Meámbar's municipal council and served without incident from 2001 to 2004.

In 2005, José Manuel Zelaya, a member of the Liberal Party, was elected President of Honduras. The following year, Rivera ran for a second

---

[1] Rivera included his wife and children in his application for relief claiming asylum, withholding of removal, and protection under the Convention Against Torture.

time as the Liberal Party candidate for Mayor of Meámbar and won. Rivera ran on a platform of offering social assistance to those in need and implemented several such programs throughout his term as mayor. In 2009, President Zelaya was deposed in a military backed coup, and the National Party candidate won the subsequent presidential election. That same year, Rivera ran for re-election and lost to Adan Rivera Padilla ("Adan"), a member of the National Party. Once again, Rivera was automatically appointed as the First Council Member for the 2010–2014 term.

Starting in 2010, Adan sought to raise his own salary and began eliminating Rivera's social programs. Due to their political differences, Rivera voiced opposition to these and other measures taken by Adan. Adan told Rivera to stop opposing him or something bad would happen to Rivera. That same year, Adan requested a civil audit into Rivera's mayoral administration in hopes of having him jailed for corruption.

In August of 2010, a campaign advisor to Rivera, Teresa De Jesus Flores, was murdered. Rivera suspects that Adan had her killed, because she was a vocal opponent to his administration. In December 2012, four masked gunmen entered Rivera's store at approximately 7:00–8:00 PM. Rivera was not home, but Reyes and the couple's three children were present. The intruders pointed their weapons at the family and claimed they were there to kill Rivera. Since the gunmen could not locate Rivera, they robbed the store and left without physically harming any member of the family. Though she did not see his face, Reyes identified one of the gunmen as Adelman Rivera Padilla ("Adelman"), the brother of Adan. Adelman is the alleged leader of a gang called "Los Riveras." Upon his return home the following day, Rivera called the police to report the home invasion, robbery, and threats. Three police officers responded to Rivera's home to take Reyes' statement, and she informed the officers of Adelman's involvement. Contrary to police procedures, none of the officers took any notes or made a written report.

No. 20-60315

Rivera contends that Adelman was not arrested, because his brother, the mayor, controls the police department's budget. Adelman was later allegedly arrested for the murder of a police officer in the neighboring city of La Libertad. Rivera does not allege any additional threats, confrontations, harassment, or persecution for nearly two years following the home intrusion.

According to the record, the audit into Rivera's Mayoral administration concluded in November 2014, and no impropriety on Rivera's part was found. In December 2014, Rivera began receiving death threats over the phone from an unidentified individual. While the caller never identified himself, Rivera believes that the caller was Adelman. The caller told Rivera that he planned to kill Rivera since Rivera was not jailed for corruption. During the second call, in February 2015, the caller informed Rivera that he was being followed and would be killed "just as they had murdered" Rivera's campaign advisor. Rivera received a third call in April 2015, in which the caller threatened to find and kill Rivera regardless of where he tried to hide within Honduras. The caller also stated that he was making these threats "so that [Rivera] would not get in the way of his brother." After a fourth call in May 2015, Rivera closed his store and moved his family to Siguetepeque, a different city in Honduras. Rivera never reported any of these threats to the police in Meámbar. In August 2015, while living in Siguetepeque, Rivera received a fifth and final threatening call. After receiving these threats, Rivera's family, apart from Ronald who entered the U.S. on his own in 2014, left Honduras and crossed the U.S.-Mexico border in December 2015.

Based on his past disagreements with Adan—stemming from his second term as First Council Member which concluded in 2014—the home invasion in 2012, and the threatening phone calls, Rivera fears he would be killed if he returns to Honduras.

4

Rivera's parents and children from a prior relationship currently reside in Meambar and have not suffered any harm or threats. Rivera's father told him that Adelman is no longer incarcerated. Rivera contends in his brief that if he were returned to any part of Honduras, he would not be protected by the police because the National Party controls the government.

On March 23, 2018, the IJ denied Rivera's application in a written decision. The IJ found that although Rivera and Reyes both testified credibly, the harm suffered by Rivera in Honduras was insufficiently severe to constitute persecution. The IJ also found that though Rivera possesses a subjectively genuine fear of future harm, such fear is not objectively reasonable. Moreover, even if Rivera had shown an objectively reasonable fear of harm if returned to Honduras, the IJ found that Rivera did not show that said harm would be inflicted on account of Rivera's political opinion or membership in a particular social group. Because Rivera failed to show that he suffered past persecution or had a well-founded fear of future persecution that meets the requirements for asylum, the IJ found that he was not eligible for asylum or withholding of removal. The IJ also held that Rivera was not entitled to protection under CAT, because he did not show that his removal would more likely than not result in his torture or that said torture would be committed by the government or with governmental acquiescence.

Rivera timely filed an appeal with the BIA. On March 24, 2020, the BIA issued an opinion finding that (1) the harm suffered by Rivera did not rise to the level of persecution, (2) Rivera did not demonstrate a well-founded fear of future persecution on account of any protected ground, and (3) Rivera did not demonstrate that it is more likely than not that he would be tortured by the government or with the government's acquiescence if returned to Honduras. On April 23, 2020, Rivera filed a Motion to Reconsider with the BIA. The BIA denied Rivera's Motion to Reconsider on November 9, 2020, because a motion to reconsider is not a vehicle to re-argue previous

No. 20-60315

arguments and Rivera's Motion repeated the same or similar arguments previously raised. He now petitions this court for relief.

II

To obtain asylum, Rivera must demonstrate that he is a "refugee" within the meaning of the Immigration and Nationality Act. 8 U.S.C. § 1101(a)(42); 8 C.F.R. § 1208.13. He can do so by showing that he has suffered past persecution or has a well-founded fear of future persecution on account of a protected ground. 8 U.S.C. § 1101(a)(42)(A).

We only review the decision of the BIA unless the IJ's decision influenced the BIA's decision. *Singh v. Sessions*, 880 F.3d 220, 224 (5th Cir. 2018) (citing *Efe v. Ashcroft*, 293 F.3d 899, 903 (5th Cir. 2002)). Here, the BIA issued a decision but relied on the underlying factual findings of the IJ's opinion, so we also review it.

We review legal conclusions *de novo* and factual findings for substantial evidence. *Revencu v. Sessions*, 895 F.3d 396, 401 (5th Cir. 2018) (quoting *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006)). Factual findings will be upheld if they are "supported by record evidence and [are] substantially reasonable." *Id.* (citing *Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir. 2009)). We only reverse if the evidence compels a contrary conclusion. *Id.* (citing *Chen*, 470 F.3d at 1134). Merely "drawing two inconsistent conclusions from the evidence" is not enough. *Id.* (citing *Arif v. Mukasey*, 509 F.3d 677, 679 (5th Cir. 2007)). Thus, Rivera bears "the burden of showing that the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion." *Chen*, 470 F.3d at 1134 (citing *Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005)).

III

"[P]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Arif*, 509 F.3d at 680 (quoting *Fatin v. I.N.S.,* 12 F.3d 1233, 1243 (3d Cir. 1993)). Persecution "generally requires a showing that 'harm or suffering will be inflicted upon [the applicant] in order to punish her for possessing a belief or characteristic a persecutor sought to overcome.'" *Id.* (citing *Faddoul v. I.N.S.,* 37 F.3d 185, 188 (5th Cir. 1994)). But "even those subject to brutal physical attack are not necessarily victims of persecution." *Gjetani v. Barr*, 968 F.3d 393, 398 (5th Cir. 2020) (internal quotations omitted).

In a conclusory manner, Rivera asserts that the evidence, in the aggregate, shows that he suffered past persecution. Rivera avers that the collective weight of the civil audit initiated by Adan, the death of his campaign advisor, the home invasion, and the threatening phone calls suffice to demonstrate persecution. We disagree. "Although we have not foreclosed the possibility that extraordinary threats—those 'of a most immediate and menacing nature'—might in themselves amount to persecution, in general, unfulfilled threats do not." *Hernandez-Baena v. Gonzales*, 417 F.3d 720, 723 (7th Cir. 2005) (citing *Ahmed v. Ashcroft,* 348 F.3d 611, 616 (7th Cir.2003)). Rivera reports receiving six threats from Adan and the man Rivera believes was Adelman over the span of five years. For nearly the entirety of those five years, Adan and Adelman knew where Rivera lived and worked, yet none of the threats were ever carried out. This harassment does not rise to the level of persecution. *See Eduard v. Ashcroft*, 379 F.3d 182, 188 (5th Cir. 2004) (holding that "Neither discrimination nor harassment ordinarily amounts to persecution under the INA . . . ."). While the robbery of Rivera's store and accompanying threat was undoubtedly a terrifying experience, no member of Rivera's family was physically harmed, and the gunmen never returned to

carry out their threat even though Rivera continued to live in the home for three more years. To the extent Rivera asserts that the IJ and the BIA erred in evaluating the reported incidents, the record does not support his assertion. Under the substantial evidence standard, relief is not warranted unless the evidence not only supports a conclusion contrary to the BIA's decision but compels it. *See Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005) (citing *Zhao*, 404 F.3d at 306). Rivera's assertions do not compel a conclusion contrary to that of the BIA on the issue of past persecution.

Alternatively, asylum may be obtained if the applicant establishes a well-founded fear of future persecution through demonstrating "a subjective fear of persecution, and that fear must be objectively reasonable." *Eduard*, 379 F.3d at 189 (quoting *Lopez–Gomez v. Ashcroft,* 263 F.3d 442, 445 (5th Cir. 2001)). The IJ found that through his credible testimony, Rivera established a subjective fear of persecution; however, he also found that Rivera's fear was not objectively reasonable. The IJ reasoned that Rivera's alleged persecutors knew where he lived at all relevant times yet "never confronted Mr. Rivera in person or attempted to physically harm him in any way." The BIA's *de novo* review of questions of law and clear error review of findings of fact held that Rivera had not carried his burden in demonstrating a well-founded fear of future persecution and the IJ had not made a reversible error in predictive fact finding and determination. We agree. Substantial evidence supports the agency's decision that Rivera failed to establish an objectively reasonable fear of future persecution. Rivera again contends that the cumulative evidence provided in his testimony shows that he will be persecuted if he is returned to Honduras. However, Rivera fails to refute the agency's conclusion that he is not more likely than not to be persecuted since he was never personally confronted despite his alleged persecutors knowing his whereabouts for years. Furthermore, Rivera's testimony is that Adan and Adelman would want to harm him due to his status as a Liberal Party politician. Rivera has

not been active in politics for the past eight years and testified that he had no intention of returning to politics. Thus, it is not objectively reasonable for Rivera to fear future persecution on his asserted political grounds. Again, this evidence does not compel a conclusion contrary to the BIA's decision. *See Zhang,* 432 at 344.

Accordingly, substantial evidence supports the BIA's finding that Rivera did not establish that he was subjected to past persecution and does not possess a well-founded fear of future persecution. Because that alone defeats Rivera's asylum application, we need not reach the alternate bases for the BIA's denial.

## IV

Because Rivera is not entitled to asylum, he cannot meet the higher standard to show that he is eligible for withholding of removal. *See Dayo v. Holder,* 687 F.3d 653, 658-59 (5th Cir. 2012). Moreover, Rivera failed to brief the denial of withholding, thus, abandoning any challenge to that denial. *See Thuri v. Ashcroft,* 380 F.3d 788, 793 (5th Cir.2004) (noting that arguments not raised in the petition for review are considered waived). Accordingly, we DENY his petition for review of his application for asylum and withholding of removal.

## V

An applicant for withholding of removal under CAT bears the burden of satisfying "a two part analysis—first, is it more likely than not that the alien will be tortured upon return to his homeland; and second, is there sufficient state action involved in that torture." *Garcia v. Holder,* 756 F.3d 885, 891 (5th Cir. 2014) (citing *Tamara–Gomez v. Gonzales,* 447 F.3d 343, 350–51 (5th Cir. 2006)). Rivera's petition fails to address the BIA's finding for the first prong of the standard, that Rivera "has not met his burden to show that he will more likely than not be tortured in Honduras." Accordingly, he has

abandoned any challenge to the denial of relief under CAT by failing to brief that issue adequately, and his petition for review is denied. *See Thuri*, 380 at 793 (noting that arguments not raised in the petition for review are considered waived).

## VI

We review the BIA's denial of a motion to reconsider under "a highly deferential abuse-of-discretion standard." *Hernandez-Castillo v. Sessions*, 875 F.3d 199, 203 (5th Cir. 2017) (citing *Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2008)). Under that standard:

> [We examine] whether the Board has acted within the bounds of an abundant discretion granted it by Congress. It is our duty to allow [the] decision to be made by the Attorney General's delegate, even a decision that we deem in error, so long as it is not capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach.

*Zhao*, 404 F.3d at 304 (citing *Pritchett v. I.N.S.*, 993 F.2d 80, 83 (5th Cir. 1993)).

The purpose of a motion to reconsider is to request that the original decision be reexamined considering information that was not initially available, such as a change of law or an aspect of the case that was overlooked. 8 U.S.C. § 1229a(c)(6)(C). A motion to reconsider is not a vehicle to raise a legal argument that could have been raised earlier or reiterate previously considered and rejected arguments. *See Matter of O-S-G-*, 24 I. & N. Dec. 56, 58 (BIA 2006).

The BIA found that Rivera had not identified a change in the law or any other factor that would warrant reconsidering its previous order. Instead, the BIA held that Rivera raised "the same or similar arguments that were raised" in his prior brief on appeal. A review of Rivera's motion reveals as

No. 20-60315

much. Accordingly, the BIA did not abuse its discretion by finding that Rivera essentially repeated the arguments he raised on appeal.

## VII

Regarding BIA Appeals Nos. A208 758 033, A208 759 744, A206 764 923, A208 759 745, and A208 758 034, Rivera's petition for review is DENIED.